## MOORE v. THE STATE.

1. The dying declaration of one deceased, made under the belief of impending death, is competent proof to go to the jury, either to show who is the guilty agent, or disclose the circumstances under which the crime was committed.

2. These declarations may be given in evidence, as well to acquit, as to convict the prisoner.

3. The dying declaration of a husband, is competent evidence against the wife, to show her guilt.

4. When these declarations are inconsistent with each other, it is the duty of the jury to weigh them, and to determine which, or whether either is to be believed; and if the charge of the court takes this duty from them, or if the court undertakes to determine these questions for the jury, it is error.

Error to the Circuit Court of Tallapoosa.

THE plaintiff in error, was indicted and convicted, in the circuit court of Tallapoosa county, for the murder of her husband. In the course of the trial, a bill of exceptions was taken, and the cause brought to this court by writ of error.

The bill of exceptions discloses the following facts. The

wounds of which the deceased died, appeared to be given with the edge of an axe ; one of them was on the front of the head, on the left side, and in length about the width of an axe ; that it cut through the scull into the brain. His physician reached him within thirty-six or forty hours after the wound was inflicted ; he was breathing, but insensible. The wound was dressed, and the deceased appeared to revive. He was asked if he felt better, to which he replied no. These facts were deposed to by the physician, who also stated that he thought him in his right mind, but said that a man whose brain had been injured, as his had, might speak rationally one moment, and be entirely out of his mind the next.

The State then offered a witness, to prove, that on the evening of the same day he took some nourishment to the deceased, and requested him to eat, stating that if he would, he would get well. The deceased shook his head, and said no. The witness then said to him, " do you know that Mrs. Moore done it ?" The deceased answered " oh yes, well enough—well enough." To this evidence, the prisoner objected, but the objection was overruled. The deceased lived some four or five days after the foregoing declaration was made ; and another witness testified, that some days after the above declaration was made, the deceased stated, that Mrs. Moore " did not do it."

The court charged the jury, that the dying declarations of the deceased, owing to the condition of his mind, at the time they were made, should not be regarded by them, as he spoke but litttle, and in detached sentences. At any rate, that what one witness stated, was neutralized by what was stated by the other, if they were of equal credibility, and that they should not operate against the accused. To which charge the prisoner excepted ; and the bill of exceptions, with the matters therein contained, are here assigned for error.

L. E. Parsons, for the plaintiff in error, insisted, that the declarations of the deceased were not properly admitted.

1st. Because there was not sufficient evidence that the de-

ceased was impressed with the belief of death, at the time they were made.

2d. That the relation of husband and wife, existing between the deceased and accused, his dying declaration could not become evidence against her.

3d. That the court erred in the charge given to the jury.

Noor, contra.

DARGAN, J.—It is well settled, that in the trial of cases for homicide, the declarations of the deceased, made under the belief that his end is *near*, are admissable, not only to designate the party who committed the crime, but also to detail the circumstances under which it was done. But these declarations must be made when the belief of death is present to the mind of the declarant, and when he believes there is no hope of recovery, but that he must die of the wounds or injury received. Declarations made under such circumstances, are considered as made under circumstances equally solemn, as if made under the obligations of an oath, and are admissible. But it is the duty of the court to determine, in the first place, upon the admissibility of such declarations, and then it is for the jury to determine upon the weight, or credibility of them. [1 Greenl. Ev. 190.]

The facts disclosed by the record, in this cause, must satisfy any mind that the declarations were made at a time when the deceased was without hope of life, on earth, and under the belief of impending death. There was no error, therefore, in permitting the declarations to go to the jury.

But it is objected, that the relation of husband and wife, existing at the time, between the accused and the deceased, rendered the declarations incompetent proof. This is not the law. One of the first cases in which the question arose, upon the admissibility of dying declarations, was that of Woodcock, and the deceased was his wife. Her declarations were received as evidence. [2 Stark. Ev. 458.] And it is well settled, that a wife may be a witness in a criminal proceeding, against her husband, for injuries done to her person; and there is no reason whatever, why a husband should not be a competent witness against his wife, for injuries done

him. But in the charge of the court, as given, there is error. It must be borne in mind, that the evidence showed, that the deceased might be rational at one moment—insane, or irrational at another. On one day he said, in answer to the question, "do you know that Mrs. Moore did it?" "oh yes, well enough, well enough." At a subsequent day it was testified, that he said, she "did not do it." It may be fairly inferred, that at one time he accused her as the guilty agent, and at a subsequent time, acquitted her of guilt.

We conceive the rule to be, that the dying declarations of the deceased may be given in evidence, as well to acquit, as to convict the accused, and they are not limited, as evidence in favor of the State alone. [See 1 Greenl. Ev. 190 ; Rex v. Scaife, 1 Mood. & R. 551.]

Here the declarations of the deceased were inconsistent with each other. There was then a direct conflict of testimony. It was the province of the jury to weigh the testimony, to reconcile it if they could, and if it could not be, then to determine which to believe. The declarations of the deceased, if made, as stated in the bill of exceptions, were in direct conflict with each other, and it was the duty of the jury to determine which declaration was true, or to which they gave credit as true. The charge of the court took from them this duty, and determined that the contradictory declarations of the deceased, neutralized each other. Whether they did or not, or whether either, or which one was true, was by law, the duty of the jury to determine—not that of the court; and for this error, the cause is reversed, and remanded, that the prisoner may be again tried, unless, in the mean time, she be discharged by due course of law.