# May v. The State.

### Indictment for Murder.

1. *Dying declarations.*—Dying declarations, to be admissible as evidence, must be shown to have been made under a sense of impending dissolution. Under this rule, the declaration of the deceased in this case, made to his wife immediately after receiving the fatal wound, "M. *has killed me,*" may have been properly admitted, as implying that he then thought he could not recover; but his subsequent declarations, made "several times during that day and the next," on which latter day he died, to the effect that M. shot him, not showing on their face a knowledge of his condition, ought not to have been received; if not being shown that the attending physician had informed him of his danger, and "no evidence being offered to show his condition in body or mind at any time between the time when he was shot and his death."

FROM the Circuit Court of Limestone.
Tried before the Hon. W. B. WOOD,

The indictment in this case, which contained but a single count, and was found at the May term of said court, 1876, charged the defendants, Phil May and John Pearson, with the murder of *James* Akard, as the name is copied into the record. They were jointly tried, pleaded not guilty, were convicted of murder in the first degree, and sentenced to imprisonment in the penitentiary for life, the judgment being in these words: "It is therefore considered and adjudged by the court, that the defendants be confined in the penitentiary of the State of Alabama during their natural lives, and that the State of Alabama recover of said defendants the costs in this behalf expended."

On the trial, each of the defendants reserved a bill of exceptions. The exceptions reserved by the defendant May are as follows: "On the trial of this cause, the State offered to prove the dying declarations of *Jonas* Akard, the deceased; and Dr. G. R. Sullivan testified, that he was called professionally to see *Jonas* Akard the day on which he understood said Akard was shot, and found him shot through the abdomen; that he was mortally wounded, and died on the next day from the wound. Mrs. *Alizia* Akard, the wife of the deceased, was then introduced as a witness by the State, and testified, that she went to her husband immediately after he was shot, and he said to her, 'Help me home,' or 'Carry me home,' or words to that effect, 'Phil May has killed me;' that she helped him to his home, some sixty yards distant; that he walked home, leaning on her, or supported by her with one hand, while she carried an axe in the other hand; that after he got home, during that day and the next, he several times said, 'Phil May shot me, and it was all a plot; tell Mr. Moore not to let him get away.' Said *Jonas* Akard was shot about seven o'clock in the morning on the 22d October, 1874, and died about four o'clock in the afternoon of the next day. No other evidence was offered, or heard, showing or tending to show his condition in body or mind at any time between the time he was shot and his death. To the introduction of so much of the evidence as purported to be the declarations of said *Jonas* Akard as dying declarations, the prisoners objected; which objection was sustained by the court as to the said John Pearson, but overruled as to the said Phil May; and said evidence was permitted to go to the jury as the dying declarations of the deceased, as against the said Phil May, and against him alone; to which ruling and decision of the court the said May excepted. Upon a subsequent day, during the continuance of the trial, after all the evidence had been heard, but before any argument of counsel to the jury, the court, of its own motion,

[May v. The State.]

reviewed its former opinion upon the admission of this evidence, and excluded from the jury so much of said supposed dying declarations as related to any alleged plot, and expressly instructed the jury that they were in no wise to consider the same; but, as to the remainder of said supposed dying declarations, the court retained its former opinion, and permitted the same to remain with the jury as evidence against the said Phil May, and against him alone; to which ruling and action of the court the said Phil May excepted."

It is not necessary to notice the exceptions reserved by the defendant Pearson.

Neither the record nor the docket shows who appeared as counsel for the prisoners in this court.

JNO. W. A. SANFORD, Attorney-General, for the State.

MANNING, J.—The declarations of a person dying from wounds, concerning the person who inflicted them—made, not under oath, or generally in the presence of the person inculpated by them—when allowed to be proved as evidence against him, are admitted as such without compliance with the general rules established for eliciting truth by other testimony. These "dying declarations" have, therefore, received much consideration from courts, and writers on the law of evidence; and the first requirement respecting them is, that they shall not be admitted, "unless it appear to the court that they were made under a sense of impending dissolution, and a consciousness of the awful occasion; though the principle is not affected by the fact that death did not ensue until a considerable time after the declarations were made." 1 Whart. Am. Cr. Law, §§ 669–671, and cases there cited; *Walker v. State*, 52 Ala. 192. We therefore held in the last cited case, because it did not sufficiently appear what was the dying man's opinion of his own condition, when he made the declarations offered in evidence, that they were improperly allowed to go to the jury; and in this case, as in that, it seems to us it was within the power of the State to make the evidence clearer and more definite on this point.

It was proved by the physician who visited Mr. Akard, that he was mortally wounded in the abdomen, of which wound he died some thirty odd hours after it was inflicted. But the physician does not say that he told the wounded man, or that he was then himself convinced, that he must soon die. Mr. Akard's declaration to his wife, when he asked her to help him home, "Phil May has killed me," made

[Sanders v. The State.]

immediately after receiving the wound, perhaps sufficiently implies that he then thought he could not recover; though such expressions are very apt to be used by any one soon after receiving a severe wound, whether it be mortal or not. But there is no evidence at all, that Mr. Akard believed that he was mortally wounded and must soon die, in the afternoon of the day on which he was shot and next day, when he "several times" used the other expressions allowed to be proved,—"Phil May shot me, and it was all a plot; tell Mr. Moore not to let him get away." And in the absence of proof that such was his opinion at those times, the declarations then made ought not to have been received in evidence. The circuit judge properly instructed the jury, on a subsequent day, that they must not regard as evidence, or allow any weight to, so much of these utterances, as charged that there was a plot; "but as to the remainder of said supposed dying declarations, the court retained its former opinion, and permitted the same to remain with the jury, against the said Phil May, and against him only." But, for the reason above mentioned, all of that declaration ought to have been excluded.

We direct attention to another matter, which we think must be a clerical error, though objected to here as error of the court. The indictment, according to the transcript filed here, is unmistakably for the murder of *James* Akard. The person killed, whose dying declarations were received in evidence, as clearly shown by the bill of exceptions, was *Jonas* Akard. And, of course, his dying declarations, that Phil May killed him, are not admissible for the conviction of Phil May, of having killed James Akard also.

Let the judgment of the Circuit Court be reversed, and the cause be remanded. Defendants must remain in custody, until discharged by due course of law.