# Young *v.* The State.

*Indictment for Murder.*

1. *Dying declarations.*—Statements made by the deceased after he received the fatal shot are not admissible evidence as dying declarations, unless it is shown that he was at the time "impressed with the belief that death was impending and would certainly ensue;" and this does not appear when the evidence only shows, as in this case, (1) that the physician who was summoned immediately told him he could not recover, (2) that he lived two days, and (3) that he declared

[Young v. The State.]

to another witness he "would get even with defendant when he got up."

2. *Charge ignoring fault in bringing on difficulty.*—A charge requested on a trial for murder, which claims an acquittal on certain facts hypothetically stated, but ignores other evidence tending to show that the defendant was not without fault in bringing on the difficulty, is properly refused.

3. *Reasonable doubt,* to justify an acquittal in a criminal case, implies more than "if it is possible, or it may be, or perhaps the defendant is not guilty;" and a charge asked, which uses those terms as the equivalent of reasonable doubt, is properly refused.

FROM the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The defendant in this case, Robert Young, was indicted for the murder of Jesse White, by shooting him with a pistol; was convicted of murder in the second degree, and sentenced to the penitentiary for the term of ten years. The difficulty between the parties occurred on the evening of May 7th, 1891, in the city of Mobile, at or near the defendant's shop, whither the deceased had gone to do some writing for him; but the attendant circumstances, if fully developed on the trial, are not clearly stated in the bill of exceptions. The statement of the deceased to the physician who was at once summoned and attended him, which was admitted in evidence as a dying declaration, against the objection and exception of the defendant, was, "that they got into a quarrel, he got scared and ran, and Bob Young shot him;" and the physician testified, from his examination of the wound, that the deceased, when he was shot, "was running and in a stooping position." The defendant, testifying in his own behalf, stated that the deceased "came running into his shop with a knife in his hand, struck at him, and cut his clothes; and that he seized his pistol, and shot in self-defense, but did not know whether he hit the deceased." The opinion states all the facts in connection with the declarations which were admitted.

The court charged the jury as follows: "In a case of homicide, the law presumes malice from the use of a deadly weapon, and casts on the defendant the *onus* of repelling the presumption, unless the evidence which proves the killing shows also that it was perpetrated without malice; and whenever malice is shown, and is unrebutted by the circumstances of the killing, or by other facts in evidence, there can be no conviction for any less degree of homicide than murder." The defendant excepted to this charge, and also to the refusal of each of the following charges, which were asked by him in writing: (1.) "The jury must not convict the defendant, unless they are convinced from the evidence,

beyond all reasonable doubt, that the defendant took the life of the deceased without any apparent necessity to do so for the protection of his own life." (2.) "Unless the evidence excludes to a moral certainty the hypothesis that the defendant might have fired on the deceased under the reasonable apprehension that it was necessary to do so in order to protect himself against great bodily harm at the hands of the deceased, they must find him not guilty." (3.) "If it may be true, so far as the jury can tell, to a moral certainty from the evidence, that the defendant fired on the deceased under the reasonable apprehension and appearance that it was necessary to do so in order to protect himself from great bodily harm at the hands of the deceased, they must acquit the defendant." (4.) "In this case, the defendant was under no obligation to retreat from the deceased; and if the reasonable appearances were, that the defendant was in danger of great bodily harm at the hands of the deceased, then he had the right to take the life of the deceased in order to protect himself, and he would not be guilty of any crime for doing so." (5.) "No man is obliged to retreat from an attack made on him in his own place of business, but has the right to stand and repel the assault by all means reasonably necessary to protect himself; and if the jury believe from the evidence that the reasonable appearances were that the defendant was in danger of great bodily harm at the hands of the deceased at the time he fired, and that he fired on the deceased believing that it was necessary to do so for his own protection, then they ought to acquit the defendant." (6.) "There is no evidence in the case tending to show that the defendant provoked the difficulty in which the deceased was killed, and therefore the jury must acquit him, if they believe from the evidence that, at the time he fired on the deceased, he did so under the reasonable apprehension that the deceased was about to do him serious bodily harm." (7.) "If from all the evidence the jury believe it is possible, or it may be, or perhaps the defendant is not guilty, and if they are [not?] morally certain that he is guilty; this amounts to a reasonable doubt, and entitles the defendant to an acquittal." (8.) "If there is a bare probability that, when the defendant fired on the deceased, the deceased was making an assault on him with a knife, in such a manner that the defendant was apparently in danger of great bodily harm at his hands, then they must acquit the defendant."

[Young v. The State.]

WM. L. MARTIN, Attorney-General, for the State, cited *Faire v. State*, 58 Ala. 74; *Mills v. State*, 74 Ala. 21; *Pulliam v. State*, 88 Ala. 1; *Hammil v. State*, 90 Ala. 577.

COLEMAN, J.—The first exception relates to the admission of statements by the deceased as dying declarations. The testimony tends to show that the attending physician was called professionally to see deceased on the 7th day of May, 1891, immediately after the fatal shot was fired. The physician testifies that deceased "was suffering very much, and was then in a dying condition;" "that he died at 6 o'clock A. M. on May 9th, 1891; that it was hardly two days from the time he was first called; that he told deceased that he was going to die." With the exception of a description of the wound, and that it caused the death of White, the deceased, the foregoing statement contains the entire predicate upon which the declarations were admitted. Before declarations of deceased are entitled to be received in evidence as dying declarations, it must appear that declarant, at the time they were made, was impressed with the belief that death was impending and would certainly ensue. It is not necessary to their admissibility, in point of fact, that they be made in *articulo mortis*, and that dissolution resulted immediately afterwards, but declarant must be impressed with the conviction that he can not possibly recover. *Hammil v. The State*, 90 Ala. 580; *Pulliam v. State*, 88 Ala. 3; *Reynolds v. State*, 68 Ala. 506; Wharton on Ev., §§ 282, 286; 1 Greenl., § 158. The facts and circumstances testified to by the physician, and the statement made by the physician to deceased, were all legitimate for the consideration of the court, which must determine the admissibility of the evidence.—*Faire v. State*, 58 Ala. 80. We fail to discover anything in his testimony, or elsewhere in the record, which indicates directly the state of mind of the deceased, at the time the declarations were made. After laying the predicate as we have stated it, the witness says: "I asked deceased who shot him, and deceased replied that Bob Young shot him; that he got into a quarrel, and got scared and ran; that he did not have a knife." We can not say from the statement of the physician here detailed, that at the time deceased made the statements testified to he had given up all hope of recovery. It nowhere appears that deceased expressed the belief that he was mortally wounded, and there is nothing to show that his confidence in the opinion of his physician was of that degree that an expression of opinion by him to the deceased, that he "was going to die,"

[Young v. The State.]

was of itself sufficient to convince the deceased of its truth. It was not necessary to render them admissible that deceased should have expressed the conviction that he would not recover; and an expression to this effect would not necessarily make them competent. The court must consider all the circumstances attending the declarations, and if from them all the fair and reasonable inference arises that declarant was convinced in his own mind that his wound was mortal, that death was impending, his declarations are entitled to be considered in evidence.— *Willis v. State*, 74 Ala. 24; 58 Ala. 80, *supra*. We think a just and salutary administration of the law requires that courts should have due regard to the rules and limitations placed upon declarations made by a person in the absence of the defendant against whom they are offered in evidence, and in regard to which he has had no opportunity to cross-examine declarant, before they can be regarded as dying declarations, and thus become admissible against him. We find in the record another statement by the deceased, to-wit: "that he would get even with him [referring to the defendant] when he got up." No question is raised on this latter statement, and it is not shown at what period of his illness the declaration was made; and we refer to it simply to show that, notwithstanding the wound and the suffering of deceased, he expected to "get up." We do not think the predicate in this case was sufficient to authorize the introduction of the statements of deceased as dying declarations.

We find no error in the first charge given by the court defining murder. It is unnecessary to consider the other charges given, which undertake to define murder in the first degree. The defendant was convicted of murder in the second degree, and can not be re-tried for a higher offense than that for which he was convicted. There was no error in refusing the charges asked by the defendant. All of them are objectionable, and, with the exception of the one numbered 7, ignore certain facts testified to by witnesses examined on the part of the State, from which, if believed, the jury might infer that the defendant was not free from fault in bringing on the difficulty. The definition given to a reasonable doubt, in charge number 7, finds no warrant in any decision of this court.

For the error in admitting the dying declarations, the case must be reversed and remanded.