State vs. Ashworth.

No. 12,603.

STATE VS. ARCHIE ASHWORTH.

Where a deceased person, at the time of his being wounded, states to a witness that he could not live much longer and that he was bound to die, his declarations made under such circumstances are admissible in favor of an accused as a dying declaration.

There is no rule of practice or of law requiring that a dying declaration should be made all at one time, without interruption or turning aside to other matters.

A failure on the part of the witness to whom the statement was made to have heard, or to have remembered all the conversation which may have taken place at the time between the deceased and other parties, does not do away with the fact that the witness heard everything and remembered everything that was said to him or in reference to that particular subject when he was present.

Rules of evidence relative to the admissibility of dying declarations are not to be as rigorously applied when the fact itself of their having been made has been satisfactorily established, and they are in favor of the accused as when they are sought to be urged against him.

The fact that the declaration was elicited by questions asked the deceased by the witness, instead of being a volunteered statement, does not render it inadmissible.

APPEAL from the Twelfth Judicial District Court for the Parish of Calcasieu. Read, J.

*M. J. Cunningham*, Attorney General, and *A. R. Mitchell*, District Attorney (*P. A. Simmons, Jr.*, of Counsel), for Plaintiff, Appellee.

*R. L. Belden* for Defendant, Appellant.

Submitted on briefs, December 18, 1897.
Opinion handed down January 10, 1898.

The opinion of the court was delivered by

NICHOLLS, C. J.    The accused in this case was indicted in the parish of Calcasieu; was found guilty without capital punishment and sentenced to life imprisonment.

The bill of exceptions on which he relies for reversal is to the effect:

" That on the trial of the cause the accused called to the witness stand one Leonard Doyle for the purpose of proving the dying declarations of Andrew Ashworth, the person the indictment charges the accused of killing on June 29, 1897.

" That the object of proving the dying declaration of the deceased Ashworth was to show that one or two declarations made by the deceased were entirely in favor of the accused and would have had great weight with the jury before whom the accused was tried. That on the trial the evidence was taken in writing by the clerk of court, and after various questions propounded by counsel of defendant and cross-examination by the State—the trial judge, upon objection made to the competency of the witness to testify, sustained the objection. That the testimony which was taken as stated was annexed to the bill as part thereof and for reference. The District Judge signed the bill without comment.

The clerk's note of the examination of the witness Doyle shows the following questions and answers, and also the objections as made by counsel and the action of the court thereon.

" Q. State if you were present in the woods on the 29th of June when you had a conversation with deceased Andrew Ashworth?

" A. Yes, I was there.

" Q. Did you hear Andrew Ashworth make any statement in reference to Archie Ashworth shooting him?

State vs. Ashworth.

" A. I did.

" Q. Did Andrew Ashworth express to you anything in reference to his dying?

" A. Yes, sir.

" Q. State what it was.

" A. He said he was bound to die, he could not live much longer.

" Q. Do you remember all the conversation; all that was said and all that was asked him?

" A. No, sir.

" Q. Do you remember the substance of all that he said?

" A. I remember all he said when I asked him.

" Q. Did you remain with him until he was removed on this cot?

" A. Yes, sir.

" Q. What time of day was it when they removed him?

" A. I do not know, sir; some time in the evening.

" Q. What time of the day was it when you arrived where old man Ashford was?

" A. I do not know; it was in the morning.

" Q. Who was present at the time you were having this conversation with him?

" A. John Ashworth, Marion Perkins, Roy Roberts, Hollis Buxton and Eb. Buxton.

" Q. Do you remember all the conversation that took place between yourself and Andrew Ashworth from the time you got there until they put him on the cot?

" A. I do.

" Q. Can you state that conversation?

" A. Yes, sir, I can."

CROSS-EXAMINED BY THE STATE.

" Q. You say you can remember all that he said with reference to his condition? State that in his exact words?

" A. He said he was bound to die—he could not live long.

" Q. You say that you remember all that he said in answer to your questions?

"A. Yes, sir.

" Q. Is it not a fact that others were there asking him questions at the same time?

" A. No, sir; if there was I did not hear it.

" Q. No one spoke to him at that time about this matter but you?

"A. Not that I heard.

"Q. Did you not, in answer to a question a few minutes ago from the court, state that what you had heard of Ashworth's statement at that time was partly in answer to questions you asked him and partly in answer to questions others asked him?

"A. I said he answered questions I asked him. I did.

" Q. Did you not state, in answer to a question asked you by Mr. Belden, that you could only state what he said in answer to questions asked him by yourself?

"A. I did.

" Q. Is it not a fact that others came up there while you were still there and had been there?

"A. Yes.

" Q. Is it not a fact that there was a sort of general conversation going on there with him when this new crowd came up, and continued after they did come up?

"A. Yes, sir.

(By the State.)

The testimony of this witness is objected to by the State for the reasons:

1. That the testimony of the witness does not show that he appreciated that he, the deceased, was in a dying condition and was dying at that time; that he did not have at that time such a conviction of immediate and impending death in his mind as would place the statement in the category of privileged testimony as a dying declaration.

2. That the testimony of the witness shows that the statement was made in answer to questions asked by himself and others at the time. That it was not a continuous and uninterrupted statement; that the witness does not remember all, or the substance of all, that was said at this time in connection with this matter, and that witness can not state all that was said between deceased and other parties other than witness himself, though others participated in the statement.

Objection as to the admissibility of the evidence sustained.

Counsel for defendant excepts to the ruling of the court.

### REDIRECT.

" Q. Did you have any conversation with Ashworth or did he tell you at that time you were in the woods with deceased, Ashworth— did he tell you, or did you hear him say that he went too far with Archie Ashworth, and that he was to blame with his own death?"

Objected to on the ground that the witness had shown himself as not qualified to testify to the whole of the statement made at that time—that he can not be permitted to testify to a part without giving the whole statement.

2. That it is an attempt to have the witness testify indirectly to that which the court has ruled the witness could not testify to directly.

3. That the witness has not been qualified before this question was asked to testify to this conversation.

### OBJECTION SUSTAINED.

1. Because if it refers to the testimony previously given by the witness the objection is well taken; if not, it is mere hearsay testimony so far as the court is informed. Counsel for defendant excepts to the ruling of the court.

Ordinarily dying declarations are introduced in evidence on behalf of the prosecution—in the case at bar they were unsuccessfully offered to support the defence. Greenleaf, Sec. 159, cites Rex vs. Scaife, 1 Mood & R. 551; Sec. 2, Lewin's Cr. Cas. 150, as sustaining the proposition that the right to offer them in evidence is not restricted to the side of the prosecutor, but that they are equally admissible in favor of the party charged with the death.

With respect to the declarations themselves he says that it is essential to their admissibility and a preliminary fact to be proved by the party offering them in evidence that they were made *under a sense of impending death*, but that it is not necessary that they should be stated at the time to be so made. That it was sufficient if it satisfactorily appears in any mode that they were made under that sanction, whether it be directly proved by the express language of the declarant or be inferred from his evident danger or the opinions of the medical or other attendants stated to him, or from his conduct or other circumstances, all of which are resorted to in order to ascertain the state of the declarant's mind. That it is the impres-

sion of almost immediate death, and not the rapid succession of death in point of fact that renders the testimony admissible. That a belief that he will not recover is not in itself sufficient, unless there be also a prospect of "almost immediate dissolution." That the declarations are admissible *only to those things to which the declarant would have been competent to testify* if sworn in the cause. That they must therefore in general speak to facts only, and not to mere matters of opinion, and must be confined to what is relevant to the issue. That it is no objection to their admissibility that they were made in answer to leading questions, or obtained by pressing and earnest solicitation, but that whatever the statement might be, it must be complete in itself, for if the declarations appear to have been intended by the dying man to be connected with and qualified by other statements which he is prevented from any cause from making they would not be received (Secs. 158 and 159).

In Sec. 161 the same writer states (citing authority for the statement) that it has been held that the *substance* of the declarations may be given in evidence if the witness is not able to state the precise language used, and he repeats that it was no objection to their admissibility that they were so obtained in answer to questions, and if it appears that the declarations were intended by the dying person to be connected with and qualified by other statements material to the completeness of the narrative, and that this was prevented by interruption or death, so that the narrative was left incomplete and partial, the evidence is inadmissible.

In State vs. Patterson, 45 Vermont, 308, it is declared that by "complete in itself" is meant that the declarant's statement of any given fact shall be all he intended to say as to that fact, and in (McLean vs. State, 16 Ala. 672) it was held that where the deceased being asked "who shot him," replied: "the prisoner," the declaration is complete and can not be rejected because from weakness and exhaustion he was unable to answer another question propounded to him immediately afterward.

Rice, in his work on Evidence, Vol. 3, Sec. 338, refers to Rex vs. Scaife, and to the comments of the Kentucky Court of Appeals upon the same as follows:

"In the case of Rex vs. Scaife, 1 Mood & R. 551, the declaration was: 'I don't think he would have struck me if I had not provoked him.'" Coleridge, J., hesitated, but finally admitted the declaration

upon the ground that it might have an influence on the amount of punishment. There was no discussion at all as to whether or not the declaration involved a conclusion. It will be observed that the declaration did not involve the one and vital question in the case, and that it was in favor of and not against the prisoner. The prisoner was not endangered by the want of an opportunity to cross-examine the dying witness because the declaration was in his favor."

"In speaking of this declaration the Kentucky Court of Appeals, in the case of Haney vs. Com. (Ky.), 5 Crim. L. Mag. 47, said that it was the expression of an opinion, but was admissible because in favor of the accused. The Ohio court (Wroe vs. State, 20 Ohio St. 460) cites it as being the statement of a fact. It was held in the Kentucky case above, as stated in the *syllabus*, that "the general rule that declarations of the deceased are only admissible when they relate to facts and not to mere matters of opinion, is subject to the exception that declarations of the mere opinion of deceased are admissible when they are favorable to the accused, and explain the conduct or motives of the deceased."

In speaking of such declarations in favor of the accused, the court said, among other things: "The admission of such declarations can do no harm. Frauds can not be practised under cover of the rule. And there is not so much danger of misconception or perjury as where the declarant speaks from hostile feelings, surrounded by sympathizing friends ready to construe his words as favorable to their own views as may reasonably be done."

Rice refers in very warm, approving terms in connection with this subject to the dissenting opinion of Mr. Justice Zollars, of the Indiana Supreme Court, in Boyle vs. State, 105 Ind. 469.

In Mattox vs. United States (13 Supreme Court Reporter, 50), Mr. Chief Justice Miller, speaking for the Supreme Court of the United States, said: "Dying declarations are admissible on a trial for murder, as to the fact of the homicide and the person by whom it was committtted, in favor of the defendant as well as against him (1 East P. C. 353; Rex vs. Scaife, 1 Moody and R. 551; U. S. vs. Taylor, 4 Cranch, 338; Moore vs. State, 12 Ala. 764; Commonwealth vs. Mathews, 89 Kentucky, 287; 12 S. W. Rep. 333). But it must be shown by the party offering them in evidence that they were made under a sense of impending death.  *   *   *  In Reg. vs. Perkins, 9 Car. and P. 395, the deceased received a severe wound from a gun

loaded with shot, of which wound he died at 5 o'clock the next morning. On the evening of the day on which, he was wounded he was told by a surgeon that he could not recover—made no reply but appeared dejected. It was held by all the judges of England that a declaration made by him at that time was receivable on the trial of a person for killing him as being a declaration in *articulo mortis*. There the declaration was against the accused, and obviously no more vigorous rule should be applied when it is in his favor."

In People vs. Knapp, 26 Mich. 117, the Supreme Court, referring to dying declarations, said: "It was held in Scaife's case (Moody and R. 551), that the prisoner had the same right with the people to show them. This rule would be very unjust without this application."

In Com. vs. Mathews, 89 Ky. 287 (12 S. W. Rep. 334), it was proved that the deceased about fifteen minutes after he was shot, when lying upon the ground bleeding and suffering, said that he hoped he would live long enough to take the gun home, and that he died in about twenty minutes. The witness said that deceased did not say whether he believed he would die or not, and he (witness) did not know whether he was conscious or not when he made the statement. The statement in substance was that he and the accused were playing, and that it was an accident. The court said: "To be competent as a dying declaration the statement must not only relate to the immediate circumstances of the transaction resulting in the injury, but it must detail facts and not the opinion of the declarant. In our opinion the statement in this instance conforms to this rule. It is unlike the case where the injured party declared he had been killed for nothing. This was purely his opinion and inference. Here the injured man said that he and the accused were engaged in play, and that the shooting was an accident. This, in our opinion, was the statement of a fact more than the giving of an opinion and the court properly permitted it to be proven."

In Adams vs. The People, 47 Ill. 376, the accused endeavored to obtain a new trial on the ground of newly discovered evidence to prove among other matters, as we understand, certain dying declarations of the deceased. Of these the court said: "The dying declaration of the deceased that he did not wish the accused hurt for what he had done, and that accused had done nearly right, affords no evidence of anything more than a truly Christian spirit on the part of

one who had been unjustly done to death and who in his dying agonies was willing to forgive the malefactor. The further statement that he knocked down the accused three times before the accused touched him was substantially before the jury on the trial." The court said " the testimony, we think, fully sustained the finding of the jury, and it could not have been different had all the evidence alleged to be newly discovered been before them."

In Moeck vs. The People, 100 Ill. 244, the court said: " It is urged that the court erred in excluding the declarations of deceased made shortly before his death, in substance, that he struck accused, and he was not to blame. They were made so long after the occurrence as to preclude all claims that they were a part of the *res gestæ*. They . were, therefore, mere hearsay evidence and were not admissible. Under the decision in Adams vs. The People, 47 Ill. 376, they were not admissible in evidence.　*　*　It is true that this was newly discovered evidence, but was said not to be evidence for the jury."

We have carefully considered the question submitted to us in this case. We are of the opinion that the grounds upon which the court excluded the dying declarations sought to be introduced in evidence were not tenable. The witness states that the deceased said that he was bound to die, that he could not live much longer, and the indictment in this case and verdict of the jury show that that opinion was well founded. The statements made by him were made at the time of his being wounded and evidently with a full sense of his dangerous condition. We know of no rule of practice or of law requiring that dying declarations should be made " all at one time without interruption or turning aside to other matters." We do not see anything in the evidence of the witness that would go to take away from the declarations the character of a complete statement to the extent that the deceased desired to make it. Unquestionably general conversation took place while witness was present with the deceased, but nothing goes to show that it had any reference to or bearing upon the facts of the case. Witness says that if any conversation of that kind went on while he was present he did not hear it; that he did, however, hear all that the deceased said to him (witness) on the subject. A failure on the part of the witness to have heard or to have remembered all the conversation which may have taken place at the time between the deceased and other parties does not in our opinion do away with the fact that he heard everything

and remembered everything that was said to him or in reference to that particular subject when he was present. As the correctness of the exclusion of the declarations does not rest upon the correctness of the particular reasons assigned by the District Court for its action we have considered the matter *dehors* those particular reasons. We were at first much impressed with the idea that the declaration was made inadmissible as being the mere expression of a conclusion or an opinion of the deceased, but have become satisfied that the rules relative to the *admissibility* of such declarations are not to be as rigorously applied when the *fact itself of their having been made* has been satisfactorily established, and they are in favor of the accused, as when they are sought to be urged against him. In the case at bar the witness named a number of persons as being present when the declarations sought to be proved were declared by him to have been made, and the danger of a falsification of facts was greatly lessened from what it would have been without such a statement. We do not think that the fact that the declaration was elicited by questions asked the deceased by the witness instead of being a volunteered statement render them inadmissible.

We were disposed to think that counsel in not stating fully in his bill of exceptions what he expected to show by said declarations, or what he had reason to believe they would be, had not placed before us sufficient facts on which to base a conclusion that declarations favorable to the accused of sufficient weight to have in all likelihood affected the result had really been made, but the testimony was cut off at the threshold of the attempt which was made to ascertain what had been said, and the question which was asked suggested with some certainty, at least, from its character, the answer which it was believed would be given to it. Lanier vs. Gallatas, 13 An. 175.

We are of the opinion that the witness should have been permitted to answer the question which was asked of him, and that a refusal to permit the same to be answered was prejudicial to the accused.

For the reasons assigned, the verdict of the jury and the judgment thereon rendered is hereby set aside, annulled, avoided and reversed, and the cause is remanded to the lower court for further proceedings, according to law, the accused to be held in custody subject to further orders of the District Court.