# Gilmer *v.* The State. .

### *Murder.*

(Decided February 13. 1913.   61 South. 377.)

1. *Homicide; Defenses; Drunkenness.*—Unless the intoxication has resulted in the actual insanity of defendant, and for that reason has rendered him mentally incapable of committing a crime, or unless his drunken condition at the time the act was committed was such as to render him incapable of entertaining the specific intent which forms an essential element of the crime of murder, voluntary drunkenness is not a defense to a prosecution for murder.

2. *Same; Dying Declarations.*—Whether or not dying declarations are competent, is for the exclusive determination of the trial court, but their credibility and weight is for the jury.

3. *Same; Fear of Death.*—It is not essential to the admission of a dying declaration that deceased in so many words expressed a conviction that she was in extremis. that death was impending, and that she was without hope of life, it being sufficient that surrounding circumstances indicate that at the time the declaration was made, deceased was in extremis, believed death to be imminent, and entertained no hope of life.

4. *Same; Punishment; Jury's Province.*—It is the duty of the jury on finding a verdict of guilt of murder in the first degree to determine whether or not the defendant shall be punished capitally.

5. *Evidence; Confessions.*—Although confessions made by a defendant to an officer having him in charge should be received with caution. they are nevertheless admissible if it appears that they were made freely and voluntarily.

6. *Appeal and Error; Harmless Error; Evidence.*—Where a matter was admitted, a defendant was not prejudiced by being required to answer questions on cross-examinations concerning such matter.

7. *Witnesses; Examination and Cross; Defendant.*—Where a defendant as a witness for himself testified that he drank heavily on the afternoon of the killing, and was drunk when the homicide occurred. he could be properly asked on the cross why he drank so heavily that afternoon.

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

Arnold Gilmer, alias, etc., was· convicted of murder and he appeals. Affirmed.

[Gilmer v. The State.] ·

JAMES S. PARRISH, and EDWARD T. GRAHAM, for appellant. The court was in error in permitting testimony of the dying declarations as the deceased merely said "if she was not going to get well, she desired to tell about the shooting."—*Sims v. State,* 139 Ala. 74; *Pulliam v. State,* 88 Ala. 3; 5 Mayf. 302. The court was in error in permitting the confessions alleged to have been made to the police officer. The court erred in permitting the cross examination indulged in of defendant while on the stand as a witness.—*Burke v. State,* 71 Ala. 377; *Seams v. State,* 84 Ala. 410.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The court was not in error in the admission of the dying declarations.—*Hussey v. State,* 87 Ala. 128. If the declarant entertains an honest opinion that he will die as a result of the wound, declarations are admissible in evidence.—*Pulliam v. State,* 88 Ala. 3; *Shell v. State,* 88 Ala. 14; *Blackburn v. State,* 98 Ala. 65; *Walker v. State,* 139 Ala. 65; *Pate v. State,* 150 Ala. 16; *McEwin v. State,* 152 Ala. 42; *Henningburg v. State,* 153 Ala. 17. The ruling of the court on defendant's motion for a new trial is irrevisable.—*Brister v. State,* 26 Ala. 107, 133; *Franklin v. State,* 29 Ala. 14, 20; *Dorsey v. State,* 107 Ala. 157, 161; *Sanders v. State,* 131 Ala. 1, 6; *Ferguson v. State,* 149 Ala. 21, 25; *Herndon v. State,* Ala. App. 56 South. Rep. 85, 86.

DE GRAFFENRIED, J.—Accepting as the true version of this matter that phase of the testimony which is most favorable to the defendant, it may be asserted, with perfect confidence, that the defendant, while in a state of voluntary intoxication, intentionally and without any provocation whatever shot and killed a woman.

[Gilmer v. The State.]

There was no theory and no evidence tending to show that the shot was due to accident, and, if the voluntary intoxication of the defendant—conceding the fact of his intoxication—furnishes him with no excuse for the commission of the homicide, then he stands helpless before the law.

1. The rule in this state seems to be well established that voluntary drunkenness never excuses the commission of any crime of which the quo animo forms a necessary ingredient unless the drunkenness of the defendant has resulted in his actual insanity and for that reason has rendered him mentally incapable of committing a crime, or unless his drunken condition at the time of the commission of the act renders him incapable of entertaining the specific intent which forms an essential element of the crime.  Mere voluntary drunkenness does not excuse or palliate the commission of any crime which is a crime without regard to the intent with which the act is done, and it furnishes no excuse or palliation for an offense of which the *intent* is a necessary ingredient unless it has produced "a state of mind which incapacitates the party from forming or entertaining a specific intent."  It is said that men sometimes "brace" themselves with intoxicants for the purpose of nerving themselves to the perpetration of a crime, and, of course, the law will never permit voluntary intoxication to excuse or palliate a crime so committed.—*Whitten v. State,* 115 Ala. 72, 22 South. 483; *Heninburg v. State,* 151 Ala. 26, 43 South. 959; *Heningburg v. State,* 153 Ala. 13, 45 South. 246.  In the instant case there was sufficient evidence to justify the conclusion of the jury that at the time the defendant committed the homicide he was, even if voluntarily drunk, capable of forming and entertaining (and that he did actually form and entertain) that specific intent which

is a necessary ingredient of murder in the first degree. In several written charges which the court gave to the jury on the above subject the law was stated as favorably to the defendant as, under the evidence, it could, with propriety, have been done.

2. The *competency* of dying declarations is exclusively for the determination of the trial court. The credibility and weight of such declarations are for the jury. The trial court first determines from the evidence addressed to it whether the party making the declaration was of the frame of mind required by the law to authorize the admission of the dying declaration, and if, from such evidence, it determines to admit the declaration and actually admits it, then it becomes the sole province of the jury to determine what, if any, weight shall be given to such dying declaration. It is not an indispensable prerequisite to the admission of a dying declaration that the deceased should, in so many words, express a conviction that he is in extremis, that death is impending, and that he has no hope of life; but such a declaration is admissible when, after a careful consideration of all the circumstances, the judicial mind is convinced, by legally sufficient evidence, that, at the time the declaration was made, the deceased was in extremis, that he believed death to be impending, and that he entertained no hope of life.—*Justice v. State,* 99 Ala. 180, 13 South. 658; *Sanders v. State,* 2 Ala. App. 13, 56 South. 69; *McLean v. State,* 16 Ala. 672; *Hussey v. State,* 87 Ala. 121, 6 South. 420. We are of the opinion that there was evidence in this case authorizing the trial court to conclude that when the deceased made her dying declaration she was not only in extremis, but that she believed her death to be impending, and that she entertained no hope of life.

[Gilmer v. The State.]

3. Undoubtedly, the evidence of an officer who testifies to a confession made to him by a person who is in his custody should be received with caution, and trial courts should see to it that no such evidence is received unless it clearly appears that the confession was freely and voluntarily made. Under the evidence in this case, however, the statement made by the defendant to the officer who had arrested him was made freely and voluntarily. The court was therefore free from error in admitting the testimony, and its credibility and weight were for the jury.

4. During his direct examination as a witness in his own behalf, the defendant testified that he had been going to see the deceased six or seven months; that he had been taking her to shows, to an assignation house; that he had been out driving with her, and had taken her to supper and dinner several times, etc. His evidence was plain that during the above period he had been on terms of criminal intimacy with the woman. On cross-examination the defendant was required to state that the last time he went to an assignation house with the woman was two or three weeks before her death. As the intimacy of the defendant with the woman was admitted by the defendant, we are unable to see how this evidence could have been prejudicial to the defendant.

5. The defendant testified that he drank heavily on the afternoon of the homicide and, in substance, that he was drunk when the homicide occurred. The court, against the objection of the defendant, permitted the solicitor on cross-examination to ask the defendant "why he drank so heavily that afternoon." Under our practice this interrogatory was permissible on cross-examination.—*Linnehan v. State*, 120 Ala. 293, 25 South. 6.

6. There are certain other minor matters relating to the rulings of the trial court on the admission of evidence to which exceptions were reserved by the defendant, which we have not discussed. While some of those rulings may have been of doubtful propriety, we find nothing in the evidence which was thereby admitted, which could have had any prejudicial effect upon the jury. We do not discuss these matters because they are not of sufficient merit.

7. It seems to us, after carefully considering this record, that the defendant has had a fair and an impartial trial. The jury have said by their verdict that the crime of which they convicted him should be punished capitally. Jurors, under our law, possess the power which, in this case, they have seen proper to exercise, and the judgment of the trial court has been legally and properly pronounced upon the verdict. There is no error in the record, and we find no reason why the judgment of the trial court pronouncing the defendant guilty of murder in the first degree and sentencing him to death should be disturbed.

Affirmed. All the Justices concur.