164 So. 92

## LEWIS v. STATE.

### 4 Div. 817.

Supreme Court of Alabama.

Nov. 14, 1935.

Clayton, Clayton & Clayton, of Clayton, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

KNIGHT, Justice.

The appellant, Monroe Lewis, was indicted for, and convicted of the offense of murder in the first degree, and his punishment fixed by the jury at imprisonment in the penitentiary for the term of his natural life. From this conviction and sentence, he appeals.

It appears from the record that the indictment is in proper form; that the defendant was duly arraigned on the indictment; that a day was set, and a special venire was drawn and summoned for his trial; and that during the entire progress of the trial the defendant was personally present in court, attended by his attorney. The record proper shows no errors, and none are suggested in brief of counsel for appellant.

It is first insisted by appellant that the trial court committed error to reversal in permitting the state to introduce in evidence what purports to be a dying declaration, made by the deceased to Dr. Salter, when the latter was called to treat the deceased a short time after the difficulty.

It appears that a difficulty occurred between the defendant and the deceased in a pea field, cultivated by the former on a plantation in Barbour county owned by a Mr. Calhoun, and that the deceased was Mr. Calhoun's overseer.

In the difficulty between the defendant and the deceased, the defendant inflicted two knife wounds upon the deceased, from which he died within a few days.

After the difficulty, the deceased was carried at once to the hospital of Dr. Salter. This physician was examined as a witness by the state and testified: "I knew Eli Stringer. He is dead. He died on the 31st of October. He was carried to my hospital on the 18th or 19th day of October. At that time, he was suffering from a knife cut of the chest and abdomen, and the loss of blood. There were two wounds on him, one was against the ribs and the other started in the ninth interspace and came forward the whole length of the rib. It penetrated the lung and went into his abdomen and cut the stomach."

Against the objection and exception of the defendant, the witness was permitted to further testify, in answer to question by the solicitor: "He didn't make any statement until I told him. They had him undressed when I got there and on the bed, and then I made the examination of the wound, and found he was practically pulseless, and pulled the wound open and air and part of his breakfast came out, I told him he would have to have an operation and as severe as it was, he *probably wouldn't get well and if he had a statement he had better make it to me and he made the statement in the room there.* I don't think any one else was present except my negro boy Charlie."

The bill of exceptions continues: "After asking the witness if he told Mr. Stringer he was in a critical condition and the witness answering yes, and the witness also informing the court that Mr. Stringer was about pulseless at that time, but conscious, the witness was examined further by the court and stated as follows: I told him that he was in a critical condition, and that I thought death was impending."

Upon this testimony of the physician-witness, the court, over the objection and exception of the defendant, permitted the state to give in evidence the statement of the deceased as to the facts of the difficulty.

It has been uniformly held that dying declarations are admitted upon the sole theory that the consciousness of approaching dissolution dispels from the mind all motive for making a false statement, in view of the fact that the declarant recognizes that he shall soon appear in the presence of the Maker. The recognition of this fact, it is held, is as binding upon the conscience of the declarant as the sanction of an oath.

214

No general rule has ever been laid down by the courts for the admission of dying declarations, and the facts of each case must be weighed and considered in determining whether the requisite consciousness of impending dissolution existed. Parker v. State, 165 Ala. 1, 51 So. 260.

It appears that, when Dr. Salter informed the deceased that he was in a critical condition, and that he *"thought"* death was impending, the deceased made no reply, nor did he indicate in any other way whether he was conscious or not of his impending death.

However, in the case of Gilmer v. State, 181 Ala. 23, 61 So. 377, as well as in a number of other cases, we have held that it is not an indispensable prerequisite to the admission of a dying declaration that the deceased should, in so many words, express a conviction that he is in extremis, that death is impending, and that he has no hope of life; but such a declaration is admissible when, after a careful consideration of the circumstances, the judicial mind is convinced, by legally sufficient evidence, that, at the time the declaration was made, the deceased was in extremis, that he believed death to be impending, and that he entertained no hope of life. This seems to be the well-nigh universal rule, and it has been the declared rule of evidence on the subject of admitting dying declarations, which forms an exception to the hearsay rule, from the earliest history of this court.

The question, of course, of determining whether the declaration of the deceased was made under such circumstances as to bring the statement within the exception to the general rule forbidding hearsay testimony, is addressed to the trial court, and this court ought not to reverse the action of the trial court in admitting the declaration whenever from the facts and circumstances of the case it may be legitimately inferred by the court that the dying declaration was made under a sense of impending dissolution.

It has been said that it may be inferred that the declarant was under a sense of impending dissolution from his apparent condition, such as the nature of his injuries, or state of his illness, and his evident danger. 30 Corpus Juris § 505, p. 266.

In the case of Wills v. State, 74 Ala. 21, this court, in an opinion by Stone, J., held a dying declaration admissible as such, which was made under the following circumstances: The physician testified that he saw Lucy Coleman (the declarant) late in the afternoon of the day she was shot, and examined her. She was shot in the abdomen, and died the next day from the effects of the shot. That he told her she would not recover, and that she had better arrange such things as she wished to arrange as soon as possible, as she could not live long. That she made no reply to the physician. That a justice of the peace, after stating to her that the doctor said she could not live, took the statement from the deceased.

In the case of Young v. State, 95 Ala. 4, 10 So. 913, 914, in an opinion by Coleman, J., this court seemed to hold that the statement by the attending physician to the declarant "that he was going to die" was not sufficient to justify the trial court in admitting the alleged dying declaration, in the absence of any evidence tending to show that the deceased had given up all hope of recovery, or that his confidence in the opinion of his physician was "of that degree that an expression of opinion by him to the deceased that he 'was going to die' was of itself sufficient to convince deceased of its truth." However, we note that the learned justice pointed to the fact, though apparently not controlling, or influencing his opinion, that there was in the record the statement of the deceased "that he would get even with him (referring to the defendant)."

In the Young Case, supra, it was observed: "The court must consider all the circumstances attending the declarations, *and if, from them all, the fair and reasonable inference* arises that declarant was convinced in his own mind that his wound was mortal,—that death was impending,—his declarations are entitled to be considered in evidence." (Italics supplied.) In support of this pronouncement the case of Wills v. State, supra, was cited. It will thus appear that it was not the intention of the court to depart from the rule announced, or conclusion reached, in the Wills Case.

After considering all the circumstances under which the declarations were made in the instant case, viz., the nature of the wounds, and the statement of the

physician to deceased, we cannot affirm that the trial court committed error in admitting the dying declaration of deceased in evidence.

In view of the tendency of the evidence to show that the difficulty grew out of the fact the defendant was bent on gathering the crops in his own way, regardless of the directions of the overseer, we think the evidence of M. C. Mitchell as to the conversation with the defendant a short while before the difficulty was admissible as tending in some degree to shed light upon the action and conduct of the defendant at the time the fatal difficulty ensued. It tended to show the animus of the defendant towards the deceased.

For like reasons, we hold there was no error in admitting the statements made by the defendant to the witnesses C. W. Taylor and L. L. Gilmer regarding the operation and management of the farm by Mr. Stringer.

Nor do we think there was reversible error in permitting proof that three or four weeks before the difficulty the deceased purchased a knife from the witness Armstrong. While it may be that this testimony was immaterial in view of the fact that it was without dispute that the defendant killed the deceased, using at the time a knife, yet we do not think it was prejudicial to the defendant to show that he purchased a knife, and where it was purchased.

The court improperly allowed the state to show by the witnesses Taylor and Mitchell that Dan Martin had made to them statements contradictory to the evidence given by him on the trial, without a proper predicate having first been laid therefor, yet the court corrected this error by permitting the state to recall the witness Martin for further cross-examination, in which proper predicates were laid.

It is insisted by the defendant that in recalling the witness Dan Martin for further cross-examination the state made him its witness, and that having done so, could not thereafter impeach him. Whether the court will permit the recalling of a witness for further cross-examination, for any legitimate purpose, is within the sound discretion of the court. On further cross-examination, it is permissible to lay a predicate for the impeachment of the wit-

ness. There is no merit in this insistence of the defendant. Hammond v. State, 147 Ala. 79, 41 So. 761.

There was no error in that part of the oral charge which instructed the jury with reference to the alleged dying declarations. Kennedy v. State, 85 Ala. 326, 327, 5 So. 300.

The defendant was not entitled to have the jury instructed in the terms of any of its refused charges.

We have examined with care the entire record, and, finding no reversible errors, it follows that the judgment of the court below must be affirmed. It is so ordered.

Affirmed.

THOMAS, BOULDIN, and BROWN, JJ., concur.