26 So.2d 598

### COTNEY v. STATE.
7 Div. 819.

Court of Appeals of Alabama.
Feb. 13, 1945.

Rehearing Denied March 13, 1945.

See, also, Ex parte State (Cotney v. State) 248 Ala. 144, 26 So.2d 608.

John J. Pruet, of Ashland, J. S. Mullins, of Alexander City, and Handy Ellis, of Columbiana, for appellant.

48

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

CARR, Judge.

Appellant was tried upon an indictment charging murder in the first degree. He was convicted of murder in the second degree.

The evidence is in irreconcilable conflict; that for the State tended to show a deliberate and intentional homicide; that for the defendant tended to show the shooting was accidental.

The lower court held that in the effort made by appellant to introduce an alleged dying declaration of deceased a proper predicate was not proven for the introduction of same. This is the only question presented by the record that merits our discussion. This seems, also, to be the view of counsel, as there are no other insistences made in able briefs filed.

The unfortunate tragedy occurred near midnight, Friday, May 28, 1943, in the front yard of the home of deceased. Mrs. Adams, wife of deceased, testified she was present when her husband, Buster Adams,

was shot by the defendant; that, immediately after the shot, "then Buster started falling and I was paralyzed, I didn't hit him any more; then he started to shoot him again; he was standing up over him and Buster looked up at him and said, 'Don't shoot me again, Amos, you have already killed me.'"

Deceased was shot in his upper gastrium just to the right of the midline. The bullet went through the body and came out just below the right kidney. Death ensued Wednesday, June 2, 1943.

Dr. Cole accompanied the injured man to the hospital in Talladega. The doctor testified that Mr. Adams talked to him en route to the hospital, but what was said is not disclosed by the record.

Dr. C. W. C. Moore saw the deceased between twelve and one o'clock Saturday morning at the hospital. Dr. Moore stated in his testimony: "When Mr. Adams was on the operating table, we gave him some blood plasma before we operated, and he told me he hoped I would be as successful with him as I had been with Jack Lowery, a young man that had a ruptured stomach; I told him we would do all we could, he was critically sick and for my opinion I couldn't tell him until after the operation, the condition was on the inside. * * * He said he had a wife and had a little boy, I think, he said two or three months old, he wanted to help raise him and look after him."

The doctor further testified: "At ten o'clock the next morning * * * I was in the room with Dr. Cobb and he asked me what do you think about my condition: I said, 'Mr. Adams, you are critically wounded;' I said, 'We can't tell whether or not you can get well, we are doing everything we can for you.' * * * He had Dr. Frank Wilson from Birmingham to see him that night, I think about nine o'clock that night, between eight and nine that night, after he was operated on between two and four o'clock in the morning. He asked Dr. Wilson what did he think about his condition. * * * And Dr. Wilson told him he was an awfully sick man and he felt like everything had been done for him that could be done and we are going to keep up what we are doing; Dr. Moore will keep

up what he is doing and hope you will pull through."

In the testimony of Mrs. Adams, wife of deceased, appears:

"Q. When was the first time he made the statement to you he didn't believe he would live? A. He made it on Sunday after he was shot Friday night.

"Q. The first time he made that statement was on Sunday after he was shot Friday? A. Yes, sir.

"Q. Prior to that time he said he would get well? A. He thought so.

"Q. Up to that time he thought he was going to get well and talked that way up until Sunday night? A. He kept asking me to ask the doctors did he have a chance."

To give the benefits of full review, we have set out with detailed particularity all the evidence bearing on the matter of instant inquiry.

It was made known to the trial court and the record discloses the context of the declaration proposed to be offered in evidence. It is: "That the deceased asked Dr. Cole if they put Amos Cotney in jail and he told him, he didn't know. Then deceased said, 'Well, I hope they don't, he is one of the best friends I ever had and I am sure this was an accident.'"

It is not made clear from the record when the statement is claimed to have been made, but unquestionably the time fixed is after deceased reached the hospital and prior to Sunday, May 30th. The queries with reference to the preliminary proof are indicative of this fact.

The introduction of a dying declaration is an exception to the hearsay rule. Care and caution should be judicially exercised in the reception of this evidence. The rule authorizing the admission should never be extended beyond the reason and the exigency which justify the admissibility. The solemnity, occasioned by the firm belief and conviction that death will ensue, binds the conscience of the declarant as would the sanction of an oath. Kilgore v. State, 74 Ala. 1; Justice v. State, 99 Ala. 180, 13 So. 658; Lewis v. State, 231 Ala. 211, 164 So. 92.

Says Professor Wigmore: "No rule can be laid down. The circumstances of each case will show whether the requisite consciousness existed; and it is a poor policy to disturb the ruling of the trial judge upon the meaning of these circumstances". 2 Wigmore on Ev., p. 1809, Sec. 1442; Parker v. State, 165 Ala. 1, 51 So. 260; Shikles v. State, 31 Ala.App. 423, 18 So.2d 412.

In approaching the instant question some well recognized authoritative principles are appropriate to observe.

■ The rules admitting dying declarations are not limited to the State, but with equal rights are available and applicable in behalf of a defendant. 40 C.J.S., Homicide, § 287, p. 1250; Moore v. State, 12 Ala. 764, 46 Am.Dec. 276.

In some jurisdictions it is held that the same rigor and strictness will not be required in making the preliminary proof when the dying declaration is offered in behalf of the accused, as when it is made in favor of the prosecution. State v. Ashworth, 50 La.Ann. 94, 23 So. 270.

The majority rule, however, prevails that the requirements are not to be differentiated, and the same rules are to be applied in each instance. It appears that our courts have adopted the majority view. Dumas v. State, 159 Ala. 42, 49 So. 224, 133 Am.St.Rep. 17; Rector v. State, 11 Ala.App. 333, 66 So. 857.

■ It is essential, and the circumstances must establish the fact, that a dying declaration was made at the time declarant no longer entertained any hope of recovery, that he was "in extremis," as it is often expressed.

■ As stated in Gilmer v. State, 181 Ala. 23, 61 So. 377, 378: "It is not an indispensable prerequisite to the admission of a dying declaration that the deceased should, in. so many words, express a conviction that he is in extremis, that death is impending, and that he has no hope of life; but such a declaration is admissible when, after a careful consideration of all the circumstances, the judicial mind is convinced, by legally sufficient evidence, that, at the time the declaration was made, the deceased was in extremis, that he believed death to be impending, and that he entertained no hope of life."

See also, Hussey v. State, 87 Ala. 121, 6 So. 420; Justice v. State, supra; Moomaw v. State, 23 Ala.App. 125, 121 So. 904.

■ While it is a circumstance to be considered in determining the admissibility of a dying declaration, the length of the interval between the declaration and the death of declarant does not control solely the inquiry. Moomaw v. State, 24 Ala.App. 459, 137 So. 40; Ragland v. State, 238 Ala. 587, 192 So. 498.

■ It is for the trial court to determine whether or not the declarations of the deceased were made under such circumstances as to bring the introduction of the statement under the influence of the rules relating thereto. Sanders v. State, 2 Ala.App. 13, 56 So. 69; Marshall v. State, 219 Ala. 83, 121 So. 72, 63 A.L.R. 560.

■ Of course, for a dying declaration to be admissible, there is included the requisite that it must relate to and embrace the facts of the res gestae of the killing and be such a statement that the deceased would have been authorized to make had he survived and been present at the trial of the cause. Humber v. State, 19 Ala.App. 451, 99 So. 68.

■ If the trial court is clearly and satisfactorily convinced that at the time the deceased made the declaration he was in extremis—that he entertained no hope of recovery—and therefore was under the firm belief and conviction of impending dissolution, and the statement is not otherwise objectionable, it is the duty of the court to admit the dying declaration in evidence. The responsibility is then imposed on the jury to decide upon its weight and credibility in the light and under the guidance of all the evidence in the case. Kilgore v. State, 74 Ala. 1; Thomas v. State, 31 Ala.App. 1, 9 So.2d 150.

The testimony of Mrs. Adams discloses that the only time decedent expressed no hope of recovery prior to the occasion it is claimed the declaration was made was immediately after he was shot and while appellant was standing over him with a drawn pistol. On the contrary, there is testimony that subsequently thereto and during the interval until Sunday, deceased was solicitous about his physical condi-

tion and made inquiries of his physicians as to the probability of his recovery. After he was removed from the place of the difficulty and up to Sunday following, if the deceased over expressed or manifested a firm conviction of impending death, it is not disclosed by the record. The tendencies of the evidence are inclined otherwise.

Under the circumstances the trial court was privileged to conclude that the alleged statement made by decedent to appellant at the place of the shooting was no more than an earnest plea to prevent further injury. In any event, we do not find from the record any proof evidencing that, at the time the alleged declaration was made, the deceased entertained a firm belief that he could not live.

By the aid of briefs of able counsel and with the authorities at our command, we have made diligent study and read many cases in our effort to find the correct answer in conformity to the principles of law which have been recognized and developed by the course of judicial decisions.

Quoting from the opinion of Presiding Judge Bricken of this court in Moomaw v. State, 23 Ala.App. 125, 121 So. 904, 905: "This witness was permitted, over objection and exception of defendant, to give in detail several statements made to him by Schull as to the difficulty, and no effort was made by the state to render these declarations competent. There was nothing to show that at the time of making these declarations the declarant labored under a sense of approaching death and had no hope of recovery. The fact that a so-called predicate had been laid to another witness several days prior would not suffice as the trend of declarant's mental attitude may have undergone a decided change pending this long period of time; and, as stated, such declarations are not competent as evidence, unless at the time of utterance the declarant is in extremis as above indicated."

The case of Walker v. State, 52 Ala. 192, lends aid to our view:

"In the cause before us the witnesses to the dying declarations of Halliday, the deceased, were physicians, and 'endeavored to encourage him and buoy him by referring to men being wounded in battle, apparently much worse,' etc. . Although they believed he would die, they did not let him know that they thought he would. In response to their encouragements, he said, he knew he would die and requested that they would send for a minister; which was done. And to their questions about 'the circumstances of the difficulty,' he replied: 'I am suffering a good deal now. I will talk to you more about it, after a while.'

"This indicates that he expected to get better. It is not improbable that he began to hope from their encouragement that he might recover. It was after this, that the statements received as his dying declarations were made; but how long afterwards does not appear. Nor does it appear what was his own opinion of his condition at the time when they were made. It was in the power of the State to have the testimony clearer and more definite on these points; and until it was made so, the declarations ought not to have been received in evidence."

In Cole v. State, 105 Ala. 76, 16 So. 762, 763, the court observed: "The declarations to the witness, Jones, were admitted upon no other predicate, than that deceased appeared 'to be suffering and was praying; * * * that he said he was in pain, appeared to be suffering very much, was praying to God to help him, and to have mercy upon him.' We have ruled so often on the subject of dying declarations, to show that they are not admissible, alone, upon such a predicate as here laid, we will not repeat the rulings."

In the case of Lakey v. State, 18 Ala. App. 442, 93 So. 51, the trial court allowed the introduction of a declaration made on the afternoon after the deceased was shot the night before. To establish its relevancy the State relied on a statement made by deceased immediately after he was shot, at which time he stated, "he was shot twice through the bowels and that he was going to die." This court held that a sufficient predicate had not been proven, it not being shown that deceased was

under the belief of impending dissolution at the time he made the declaration.

The case of May v. State, 55 Ala. 39, is very much in factual similarity to the inquiry at hand. We quote from the body of the opinion: "It was proved by the physician who visited Mr. Akard, that he was mortally wounded in the abdomen, of which wound he died some thirty odd hours after it was inflicted. But the physician does not say that he told the wounded man, or that he was then himself convinced, that he must soon die. Mr. Akard's declaration to his wife, when he asked her to help him home, 'Phil May has killed me,' made immediately after receiving the wound, perhaps sufficiently implies that he then thought he could not recover; though such expressions are very apt to be used by any one soon after receiving a severe wound, whether it be mortal or not. But there is no evidence at all, that Mr. Akard believed that he was mortally wounded and must soon die, in the afternoon of the day on which he was shot and next day, when he 'several times' used the other expressions allowed to be proved,—'Phil May shot me, and it was all a plot; tell Mr. Moore not to let him get away.' And in the absence of proof that such was his opinion at those times, the declarations then made ought not to have been received in evidence."

See also, Justice v. State, supra; Young v. State, 95 Ala. 4, 10 So. 913; Titus v. State, 117 Ala. 16, 23 So. 77; Phillips v. State, 3 Ala.App. 218, 57 So. 1033; Johnson v. State, 17 Ala. 618; Ex parte Nettles, 58 Ala. 268.

We are forced to the view that the primary court was not in error in holding that sufficient preliminary proof was not offered to permit the introduction of the dying declaration in question.

The Attorney General in brief insists also that the declaration claimed to have been made, and which is set out in the record, was not admissible for the further and other reason it does not relate to the facts and circumstances of the shooting and therefore was not within the res gestae of the occurrence. It is also urged that the statement is a conclusion of the declarant.

In view of the decision we have reached with reference to the insufficiency of the preliminary proof, we see no good reason to treat the other queries.

There is no error apparent in the record, and the case is due to be affirmed.

Affirmed.