## OSCAR SIMS v. THE STATE.

### No. 8378.    Decided June 4, 1924.

#### Rehearing denied June 27, 1924.

**1.—Manslaughter—Sufficiency of the Evidence.**

Where, upon trial of murder and a conviction of manslaughter, the evidence is sufficient to sustain the conviction, there is no reversible error.

**2—Same—Evidence—Dying Declaration—Predicate.**

Where, upon appeal from a conviction of manslaughter, appellant complained that he was not permitted to prove a dying declaration on the part of his wife, but it appeared from the record that no sufficient predicate had been laid, that at the time of making the statement deceased was conscious of approaching death and believed there was no hope of recovery, there is no reversible error in excluding the declaration.

**3.—Same—Rule Stated—Dying Declaration—Exculpatory Declaration.**

Where appellant contended and sought to have this court apply a more liberal rule to a case in which the dying declaration is exculpatory than that which is applied when the same is incriminating, held that this court is unwilling to engraft this new rule upon our system of procedure.

**4.—Same—Rehearing—Predicate—Dying Declaration.**

The court after again carefully reviewing appellant's bills of exception, must adhere to its former opinion that the trial judge properly held the predicate for the admission of the alleged dying declaration of the deceased, as not established, and the motion for rehearing must be overruled.

Appeal from the District Court of Fannin.    Tried below before the Honorable C. A. Wheeler, Special Judge.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Fred S. Rogers,* for appellant.

*Tom Garrard,* Attorney for the State, and *Grover C. Morris,* Assistant Attorney for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Fannin County of manslaughter, and his punishment fixed at five years in the penitentiary.

The facts in the record seem to warrant the conclusion of guilt reached by the jury and will not be discussed by us.    By three wit-

nesses appellant sought to prove a dying declaration on the part of his wife, and 'the only bills of exception in the record are to the refusal of this testimony. Of the four things made necessary by Article 8088, C. C. P., in establishing a predicate for the introduction of dying declarations, but the first is involved, i. e. was it satisfactorily proved that at the time of making the statement deceased was conscious of approaching death and believed there was no hope of recovery? We have carefully weighed the utterances of the deceased at the time and of each person present, as well as what had been said and had taken place and regret that we are unable to agree with the contention of learned counsel for appellant.

The shooting took place about 8 o'clock at night and the statement was made some twelve hours later. Deceased was shot in the upper part of the leg. The doctor who attended her said at no time did he tell her she was in danger of death because of his fear of the effect of such statement upon her. No one else seems to have suggested the likelihood of dissolution. When the witnesses by whom the proof was offered, came to the house next morning, none of them suggested that she, deceased, was in a dangerous condition. They did not know such fact. One of them, Mr. Merrill, asked deceased to tell him how it happened and she told him and he then said that they (meaning officers) would arrest appellant for this,—and deceased said, "Well, I don't want him arrested, I was as much to blame as he was, and I want him here to take care of the children." She was perfectly rational at the time and told witness all the particulars of the shooting. We have been unable to find anything in the statements of deceased, or in the surrounding circumstances, or in what had been said to her,—from which we could conclude the learned trial court in error in the rejection of the testimony. The rule has been frequently discussed and applied and a restatement of the various conclusions reached by the court upon different states of fact as evidenced by the decisions, would seem unnecessary. Appellant seeks to have us apply a more liberal rule to a case in which the dying declaration is exculpatory than that which is applied when same is criminating, and cites Mr. Wharton's Criminal Evidence, Vol. 1, p. 887, 10th Ed., and State v. Ashworth, 50 La. 94, 23 So. 270. Mr. Wharton makes his statement apparently wholly upon the authority of the Louisiana case cited and merely states that it has been said that the rule should not be so vigorously applied when the facts satisfactorily show that they favor the accused as when they are urged against him. No other cases or authorities are cited by this elementary writer. We so seriously doubt the soundness of the announcement as to be unwilling to engraft it upon our system of procedure. One accused of crime in this State is now given the presumption of innocence, the benefit of reasonable doubt, the right of appeal and com-

plaint of all rulings thought to be adverse; and in the absence of some stronger showing of authority or reason for adopting the rule suggested, we must respectfully decline to give it our approval.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

### ON REHEARING.

### June 27, 1924.

LATTIMORE, JUDGE.—Appellant strongly urges the incorrectness of our conclusion that the learned trial judge properly held the predicate for the admission of the alleged dying declaration of the deceased, as not established. We have again carefully reviewed the three bills of exception in the record complaining of this action of the court below.

Deceased was shot in the leg, a wound which ordinarily might not be deadly in character save for the fact that a large blood vessel was severed. No statement of the dangerous character of the wound was made to her. She lived with her husband and two little children and the shooting appears to have been the result of domestic trouble. Early the next morning after the shooting the three witnesses, complaint of the rejection of whose testimony appears in the three bills of exception mentioned, went to the home of deceased and what took place appears in said bills of exception: The testimony of said witnesses was heard by the learned trial judge in the absence of the jury. Mr. Merrill, the first of said witnesses, was asked by appellant's counsel what deceased said that would lead him to believe that she realized her serious condition. His reply was, "Well, I went in and I says, 'Carrie, tell me how this all happened,' and she says, 'Well, Mr. Oscar, it come up this way,—Snooks (her three year old boy, and she also has one about one year and a half old) had spilled some water on the floor and left his wagon down in the field, and he was crying and she wanted to whip him and Oscar didn't want her to and this was the starting point of the trouble;' and I says, 'Well, Carrie, they will arrest Oscar for this;' she says, 'Well, I don't want him arrested,' she says, 'I was as much to blame for it and I want him to take care of the children.' " The witness was asked if deceased said anything about dying and replied that she did not, but from her talk about not wanting Oscar arrested, and him to take care of the children, witness inferred that she thought she was going to die. Witness says she was perfectly rational, and that the above is all she said to him. The same testimony appears from each of the other two witnesses. One of the three witnesses, Caroline McKinney, after testifying to the court that deceased said, "I want Mr. Oscar, I don't want you to arrest my Oscar, I was as much in fault as he was," and she just did not say anything else, only said she wanted

him to take care of the children. The witness was asked by appellant's attorney if she understood by that she meant when she was gone and witness replied that she understood it that way.

Nothing appears in any of the bills of exception beyond what we have set out. The argument in appellant's motion that the deceased said "When she was gone," is not borne out by the bill of exceptions. The woman was living with her husband and two children. She was shot in the leg. She expressed a desire that her husband be not arrested, that his presence was necessary to take care of the children. The fact that his services were deemed necessary in taking care of the children, in nowise seems to us to reflect the fact that the woman expected to die. She had no one else there to take care of the two children while she was confined in bed with her wound, and we are unable to bring ourselves to accept appellant's version of the matter, or to believe that the language used by her imported or was capable of the inference that she thought herself in a dying condition. We regret that we cannot agree with appellant in the contention so earnestly made by him here, but upon re-examination of the matter are but impressed with the belief that our original disposition of the case was correct.

The motion for rehearing will be overruled.

*Overruled.*