WILLIAM L. GAMBRELL v. STATE OF MISSISSIPPI.

[46 South., 138; 17 L. R. A. (N. S.), 291.]

**1. CRIMINAL LAW AND PROCEDURE.** *Evidence. Dying declarations. Impeachment.*

A dying declaration is in law no more sacred than ordinary testimony and is subject to be impeached by testimony which impairs its value.

**2. SAME.** *Code 1906, § 1919. Religious belief or want of it*

Testimony that deceased did not believe in a Supreme Being, offered to discredit his dying declaration, is not rendered inadmissible:
(*a*) By the fact that it relates to a time a year before his death; or
(*b*) By Code 1906, § 1919, providing that no one shall be disqualified as a witness because of his religious belief or the want of it.

**3. SAME.** *How legal doubts resolved.*

Where there is a serious doubt in a criminal case touching the admissibility of evidence, or regarding the propriety of an instruction, it should be resolved in favor of the accused.

FROM the circuit court of Smith county.

HON. ROBERT L. BULLARD, Judge.

Gambrell, appellant, was indicted and tried for the murder of

---

Robert Grayson, was convicted and sentenced to the penitentiary for life and appealed to the supreme court.

The deceased was shot from ambush, there being no eye-witnesses. Deceased, however, made a dying declaration shortly before his death stating that he recognized the appellant as the assassin, and this evidence is chiefly relied on by the state for conviction. Among other errors assigned is the action of the court in refusing to admit testimony to show that deceased was an infidel.

*J. J. Stubbs, B. W. Sharbrough, R. S. Tullos, G. R. Noble, W. H. Hughes* and *Stone Deavours,* for appellant.

The court below erred in sustaining the objection of the state to the testimony offered by the appellant that the deceased Grayson was a man without religious convictions, who boasted of his infidelity, who did not believe in any hell, or in a state of future reward or punishment. On the trial of the case in the court below the state was permitted to prove the alleged dying declaration of the deceased Grayson. The appellant sought to impeach this alleged dying declaration by offering testimony to show that the deceased was a man without religious convictions, one who boasted of his infidelity, who did not believe in God, or in any hell or heaven, or in any state of future reward or punishment. The court below sustained the objection of the state to this testimony. The court will understand that this testimony was offered by the appellant in the court below, not for the purpose of showing that the alleged dying declaration was inadmissible, but for the purpose of affecting the weight to be attached to the declaration. This testimony ought to have been admitted because it went to the credibility of the man who made the dying declaration. The precise question has been passed upon by this court in the case of *Hill* v. *State,* 64 Miss., 431, 1 South., 494. It is true that in the *Hill case* the decision of the trial court was affirmed for the express reason that by the testimony of the appellant himself he was guilty of manslaughter

of which crime the jury had found him guilty. In the *Hill case,* CAMPBELL, Judge, in delivering the opinion of the court said: "We are clearly of the opinion that the court erred in not permitting the testimony to show that Brown's religious belief was such as to detract from the value of his dying declaration." We do not remember any decision by this court in which a statement of the law has been made any more clearly. The great weight of authority, so far as we have been able to find, is in harmony with the *Hill case.* In 4 Encyclopedia of Evidence, 1014, par. 3, we find the following: "For the purpose of affecting the credibility of the declarations, it is competent to show that the declarant because of his want of religious belief, was not a person of such character as was likely to be impressed with a religious sense of his approaching dissolution, and that consequently no reliance is to be placed upon what he said." In a note to 10 Am. & Eng. Ency. of Law (2d ed.), 375, we find the following: "But under some of these statutes (referring to the statutes making witnesses competent to testify regardless of their religious belief) the declarant's want of religious belief may be shown as affecting the credibility of the dying declaration." In support of this note, in addition to the case of *Hill* v. *State, supra,* there are cited *Nesbit* v. *State,* 43 Ga., 238, and *Goodall* v. *State,* 1 Ore., 333. On page 384 of the same book the following statement of the law is made: "The value of the declarations as evidence may be impaired by showing that the declarant did not believe in a future state of reward or punishment." In *Goodall* v. *State,* 80 Am. Dec., 396, the first paragraph of the decision is as follows: "The dying declaration of the deceased being admitted in evidence, the counsel for the prisoner offered to prove that the deceased was a disbeliever in a future state of rewards and punishments, for the purpose of discrediting the dying declarations. And I am of opinion that such evidence should have been admitted; for this belief, and the anticipation of future retribution, is the only sanction of such declarations. It is supposed that one impressed with the fear of immediately impending dissolution, and believing the he will

soon be called to answer for the truth of his statement to his final Judge, will be under restraint against falsehood sufficient to make the admission of such evidence safe, and generally contribute to the ends of justice.   But when the deceased was a disbeliever, and consequently under no apprehension of future punishment for his falsehood, it is reasonable to believe that, however much he may be impressed with the fear of immediate and certain death, still he would not be under such strong influences to make a true statement of the facts as one impressed with the belief of future accountability; 2 Russell on Crimes, 764, 766." In Greenleaf on Evidence (16th ed.), 253, sec. 162, under the head of "Weight of Declarations," we find the following: "Where the witness has not a deep and strong sense of accountability to his Maker, and an enlightened conscience, the passion of anger and feelings of revenge may, as they have not unfrequently been found to do, affect the truth and accuracy of his statements, especially as the salutary and restraining fear of perjury in such cases is withdrawn."   We call the court's attention to section 1443 of Wigmore on Evidence, note 2, p. 1810, and especially to that part of the section at the top of page 1811; from this section is clearly to be deduced that the author believes in the doctrine that the religious belief of the party making the dying declaration "goes to the weight of his statements."   In 21 Cyc., 991, par. 11, we find the following: "And where by statute a want of religious belief is no longer a disqualification of witnesses, although the irreligious character of the declarant be relied on to exclude his dying declaration, it may be shown that he did not believe in a future state of rewards and punishments for the purpose of impeaching his credibility; for such a person, although *in articulo mortis* might not be so solemnly impressed with the necessity of speaking the truth."   And on page 994 of the same volume we find the following: "What ever may be the rule as to the competency of witnesses the accused may always show by way of impeachment that the declarant was without an enlightened conscience, or a deep sense

·of accountability to his Maker; for where the declarant was without fear of final retribution it cannot be said that the solemnity of the occasion was equivalent to the sanction of an oath, and his dying declarations should not be given much consideration by the jury." In *State* v. *Elliot,* 45 Iowa, 436, we find the following: "Proof that declarant was an atheist or materialist is not admissible to render dying declarations incompetent, but may be received to impeach his credibility."

We have not found any authorities holding that this testimony offered by the appellant in the court below was not competent. There can be no doubt that the alleged dying declaration of Grayson was the most powerful testimony introduced against the appellant in the court below; without it there could be no ·conviction. The jury was deprived of the opportunity to judge of the credibility of the alleged dying declaration.

*George Butler,* assistant attorney-general, for appellee.

It is insisted that it is reversible error for the court to have refused to permit defendant to show that about one year prior to his death deceased had expressed the belief that there was no hereafter, and had boasted of his infidelity, for the purpose, as stated "of affecting the weight to be attached to the declaration."

The rule is laid down in sec. 1446 of Mr. Wigmore's work on evidence that the declarant is open to impeachment, and discrediting in the same way as other witnesses. To the same effect is the text in 4 Ency. of Evidence, 1013, and 21 Cyc., 993. In fact this is the rule laid down by all the text writers on the subject. If this conclusion is correct then this testimony is in no proper sense an impeachment. I am not unmindful of the case of *Hill* v. *State,* 64 Miss., 431, 1 South., 494, but I submit that the decision in that case and other cases to the same effect proceed upon the wrong hypothesis. Independent of statutory provision, want of religious belief renders the witness incompetent as such, but where the statute provides that the lack of the same shall not disqualify, it could hardly be contended that as af

fecting his credibility, his want of religious qualification might be shown. This ought to the the rule (for consistency's sake) in the states only where it is held that it is proper for the jury to determine whether or not the declaration was made under a sense of impending death, before they are to consider it as a dying declaration. But in those states, as in this, where the question of the competency of the declaration is for the court, it is not for the jury to say that they do not consider this testimony competent, and therefore not to be considered. The question of religious belief goes to the competency and not to the weight of the testimony. This is the very point suggested by Mr. Wigmore in section 1443, p. 1811, of his work.

But, conceding the competency of this offered testimony, and the error in its exclusion, it will not work a reversal in this case. Mr. Wigmore says (section 1443): "The physical revulsion peculiar to the moment ought to be regarded as the essential element of the grantee, rather than the theological belief."

The right result has been reached. Appellant in fact ought to congratulate himself upon the sentence received. He was ably represented by a distinguished array of counsel at the trial. Wealth and its influence were brought to bear with all their force in his behalf. Surrounded by these and friendly officers he has been pronounced guilty by a jury of his county, with no errors of moment as to the admission or exclusion of testimony, with his theory clearly presented on the law and the judgment ought to be affirmed.

MAYES, J., delivered the opinion of the court.

Among the many assignments of error made in this case we deem it necessary to notice only the one discussed in the opinion. The evidence upon which appellant was convicted was mainly circumstantial. The only positive proof as to who did the killing is shown by the dying declaration of deceased. Under these circumstances, and by way of impeachment of this dying declaration, which is the most damaging and conclusive testimony, as to

who did the killing, the defense offered a witness to show that the deceased was an infidel, and offered to prove that the deceased boasted of the fact that he did not believe in God, the devil, or anything of a like nature; that deceased was an irreligious man, and had contempt for the church, etc. The witness by whom this was sought to be proved had employed deceased, but he had quit working for him about a year before he was killed, and from that time witness had no acquaintance with him. The testimony was objected to by the state, and the objection was sustained; the court assigning as a reason for excluding this testimony that in its judgment it thought such testimony ought to be confined to the time the supposed dying declaration was made. In the case of *Hill* v. *State,* 64 Miss., 432, 1 South., 494, it is held that testimony of this character was admissible for whatever it was worth as a detraction from the weight and value of the dying declaration. Such proof is not admissible for the purpose of rendering incompetent the dying declaration; but, when the dying declaration has been admitted, such proof is admissible as affecting the value of the dying declaration, and it is proper to go to the jury for whatever it is worth. Code 1906, § 1919. The dying declaration of a party is simply a part of the evidence. It is not regarded in law as more sacred than the testimony of a witness, to say the least of it. It is subject to discredit and impeachment by any competent testimony which impairs its value.

Under our law it is a prerequisite of the right to testify that the witness shall be sworn or affirmed to speak the truth. The object of the oath or affirmation which the law requires of a witness before he may testify is to obtain a hold on his conscience by thus reminding him that there is a superhuman power to whom he will be retributively accountable for any false statements. The oath or affirmation presupposes a belief by the party making it in that superior power which is clung to by all Christian people. As affecting the credit of any witness' testimony it may be shown that the party introduced has no sense

of the binding force of his oath or affirmation, because he does not believe in a supreme being. For the same reason such testimony is admissible as affecting the credit to be given by the jury to a dying declaration. It is true that, in order to render admissible a dying declaration, it need not have the sanction of an oath. Because the dying declaration is made under a sense of impending dissolution, the law considers this as imposing upon the conscience of the declarant as great an inducement to speak the truth as could be imposed by any form adopted by the law. Wigmore on Evidence, § 1443; 21 Cyc., 992. The dying declaration may be discredited by any testimony which would be permissible to discredit the testimony of the declarant, were he in court testifying. This being the case, the dying declaration may be discredited by showing that the declarant was a nonbeliever in God; and such testimony is for the jury to pass on, and to say to what extent it shall be allowed to affect the value of the dying declaration as evidence. It can make no difference when this state of mind existed, in so far as it affects the admissibility of such evidence. It was not necessary, in order to render this testimony admissible, that it should show that the deceased was a nonbeliever at or near the time he made the dying declaration. It was admissible on the part of the defense to show that such a state of mind existed at any time during the life of deceased, and it was for the jury to say, under the facts, whether or not deceased had reformed or been converted to faith in God, and what influence it should have. It can in no way affect the right to introduce the testimony by showing that this frame of mind existed a long time prior to the date the dying declaration was made. The time when this condition of mind is shown to have existed is a matter of argument, to be made to the jury, as showing or not showing that it existed at the time the dying declaration was made, and hence pertain to the weight of the evidence; or it was open to the state to rebut this proof of nonbelief by other proof that the condition of the mind of the deceased had changed.

But all these matters were for the jury on the proof made, and could not affect the admissibility of the testimony. Wherever there is any serious doubt in the law as to whether or not certain proof is or is not permissible, a safe rule to pursue is to solve the doubt in favor of the accused and permit the testimony to go to the jury. What is here said in reference to admitting testimony in cases of serious legal doubt equally applies to the granting of instructions in favor of accused. If this policy was pursued by the trial court, it would save many reversals. On the facts in this case, we are not prepared to say, with this proof in, that the jury would have returned the same verdict; and because of this it is compulsory on us to reverse the case. The testimony offered was in impeachment of the most material evidence in this case showing the guilt of the appellant. It was admissible, and it is not for us to say what weight would have been given to it by the jury. They had a right to hear this testimony, and to pass on it, and to give it such weight as in their judgment they deemed proper.

*Reversed and remanded.*