# Parker *v.* The State.

## *Murder.*

(Decided April 16, 1914. 65 South. 90.)

1. *Homicide; Dying Declarations.*—Where, at the time the statement was made, deceased was confined to his bed, suffering from a serious gunshot wound from which death resulted in less than a week, and in making the statement he said that he had been shot very badly, seriously, and that he had been killed by the person whom he charged with shooting him, a sufficient predicate was laid for the admission of such statement as a dying declaration.

2. *Witnesses; Examination; Relation of Parties.*—A defendant was not entitled on the direct examination of one of his own witnesses to show by witness that the witness was not related to any of the parties.

3. *Evidence; Res Gestae.*—It was improper to exclude evidence that during the progress of the difficulty defendant heard someone say, "give it to him over the head," since such evidence was admissible as of the res gestæ, as tending to show who was at fault in bringing on the difficulty, and as tending to shift the responsibility for the killing.

4. *Same; Inculpatory Writing.*—A note written by defendant containing inculpatory matter and given to a witness with the request that he deliver it to one who was implicated with defendant in the killing, was admissible against defendant.

APPEAL from Pike Circuit Court.

Heard before Hon. H. A. PEARCE.

John Parker was convicted of murder in the second degree, and appeals. Reversed and remanded.

FOSTER & SAMFORD, for appellant. The dying declarations were not based on sufficient predicate to authorize their admission.—*Titus v. State,* 117 Ala. 16; *Nordan v. State,* 143 Ala. 15; *Justice v. State,* 99 Ala.

180; *Kilgore v. State,* 74 Ala. 1. Relationship of witnesses is material on the question of credibility.—*Ludlow v. State,* 156 Ala. 58. The words and conduct of the parties at the time of the difficulty are admissible. —*Young v. State,* 149 Ala. 16; *Nelson v. State,* 130 Ala. 84; *Nordan v. State, supra.* The note written by defendant was not admissible.—*Estes v. State,* 140 Ala. 151.

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State. The note was admissible.—*Beck v. State,* 80 Ala. 2; *State v. Vance,* 80 Ala. 356. What defendant heard some one say during the progress of the difficulty was not admissible.—*Pope v. State,* 57 South. 251, and cases cited. Under all the authorities, a sufficient predicate was laid for the admission of dying declarations.

PELHAM, J.—No general rule can be laid down for the admission of dying declarations, and, as the circumstances of each case will show whether the requisite consciousness of a conviction of impending dissolution existed, it is "poor policy," says Prof. Wigmore in his treatise on Evidence (page 1809, § 1442), to disturb the ruling of the trial judge upon the meaning of these circumstances. This principle laid down by Prof. Wigmore has been recently quoted and cited with approval by our Supreme Court.—*Parker v. State,* 165 Ala. 1. In the case presented, the attending circumstances and the condition of the declarant (confined to his bed suffering from a serious gunshot wound, from which death resulted within less than a week), taken in connection with his having said, at the time of making the statement that was admitted as a dying declaration, that he was shot "very badly, seriously," and that

he had been "killed" by the person who he said had shot him, shows a sufficient predicate to justify the court in admitting the dying declaration complained of as erroneously admitted. See *Ex parte Key*, 5 Ala App. 274, 59 South. 331, where we have discussed this question and reviewed the authorities.

The court properly refused to allow the defendant to show by his own witness Doster on direct examination that he was not related to the parties. Relationship to the parties may be established on cross-examination of a witness for the purposes of showing bias or interest, or affecting his credibility, but no suggestion had been made that the witness was related to any of the parties; such an issue was not before the court, and there is no tenable theory upon which such evidence was admissible; and it was wholly incompetent for the defendant on the original examination of his own witness to show by him that he was not related.

The trial court was in error in its ruling in sustaining the objection of state's counsel to that part of the testimony of the defendant, when testifying as a witness in his own behalf, wherein he testified that, during the progress of the difficulty resulting in the killing with which he was charged, he "heard somebody say, 'Give it to him over the head.'" The nature of the remark and the language used leaves no escape from the conclusion that it must have been made by some person present and participating in the fatal transaction. It was clearly a part of the res gestæ, and was made at a time (as narrated by the defendant) making it explanatory of the conduct of the parties, and material in the connection in which it was offered, as having a tendency to show who was at fault in bringing on the difficulty, and in fixing the responsibility for the killing.

The paper writing, or note, given by the defendant

to the witness Geo. Washington with the request that he deliver it to Otio Osborn, who was implicated with the defendant, was competent and properly admitted in evidence. It was identified as the same paper that the defendant had given to the witness and contained matter having on its face a tendency to incriminate the defendant.—*Oakley v. State,* 135 Ala. 15, 33 South. 23; *Coleman v. State, Infra,* 64 South. 529. It also showed a plain purpose upon his part to manufacture and impose false testimony on the court in the trial of the case. "There is a principle of law that if a fraud on the court be attempted, in the getting up of false testimony, or any other artifice tending, or designed to deceive or mislead, or to make the false appear to be true, and this is knowingly assisted, or procured to be done by the suitor, this is a circumstance which the jury may rightly consider, to the disadvantage of the party making or assisting such attempt. An honest cause, the law considers, needs not the aid of such reprehensible methods."—*Beck v. State,* 80 Ala. 1.

We have examined all other matters presented by the record, and find that they do not show error or require discussion. For the error pointed out, the judgment of the lower court must be reversed.

Reversed and remanded.