(121 So. 72)

MARSHALL v. STATE. (8 Div. 56.)

Supreme Court of Alabama. March 21, 1929.

---

[1] 22 Ala. App. 272.

J. N. Powell, of Falkville, for appellant.

Charlie C. McCall, Atty. Gen., for the State.

FOSTER, J. The defendant was indicted, tried, and convicted of murder in the first degree, and sentenced to the penitentiary for life. The deceased was her husband and was shot in the back, when there is not shown to have been any other person than defendant present. They had been married thirty-eight years, had been divorced once, and another suit for divorce by her against him some years before resulted in a decree denying the divorce. Defendant testified deceased shot himself. The state offered two dying declarations, which were received in evidence. One of them was given in evidence by the doctor. He reached the room soon after the shooting, and found deceased on his knees, very pale, with a gunshot wound in his back, which caused his death two days later. He found a pistol in the room on the cot, where deceased had apparently been lying. It had one empty shell and five loaded ones. This cot was the only bed in the room. Over defendant's objection and exception that the question called for hearsay testimony, the witness was allowed to testify as follows: "When I went in he [deceased] said, 'Doctor, she has got me.' I said, 'Who got you, Mr. Marshall?' He said, 'My wife—I was lying on the cot asleep, with my face to the wall: I heard the report of the gun and I turned over, and felt something hot running down my back—when I turned over I fell off the cot.' I said, 'Mr. Marshall, I can do nothing for you here, I will have to take you to the hospital.' He said, 'I think it is unnecessary.' I said, 'It is the thing to do.' He said, 'Yes, take me to the hospital.'" Defendant moved to exclude the statement as a whole, and also that part as follows: "Doctor she has got me. * * * Doctor, I was asleep with my face to the wall." Both motions were overruled, and defendant excepted. On cross-examination defendant asked the witness the following question: "Doctor, was he an infidel?" The state objected, the court sustained the objection, and defendant excepted. Another witness testified that he rode in the ambulance with deceased to the hospital, and during the trip had a conversation with him. This was some 30 or 40 minutes, he testified, after deceased was shot. He told witness, "She finally got me." There was general objection and exception by defendant. No ground was assigned. The witness was asked for any further statement deceased made. Defendant objected, but assigned no ground of objection. The witness answered: "He said, 'I laid down to rest, and went to sleep, and she took the pistol from under the pillow from under my head and shot me in the back while I was asleep.'" Defendant moved to exclude the whole answer, and also the following: "She took the pistol from under my head while I was asleep and shot me in the back." No ground was assigned either in the objection or motion to exclude.

We will first consider the declaration testified to by the doctor. Objection was made that it was hearsay. It was subject to that objection, unless it was admissible as a dying declaration. 1 R. C. L. 528. That objection therefore presents the question of its admissibility as a dying declaration. The first inquiry in that connection is whether, at the time the statement was made, deceased was conscious of impending death. The admissibility of such evidence is a question for the trial court, reviewable on appeal, if there is no sufficient evidence on which to admit the declaration as a dying declaration. Gilmer v. State, 181 Ala. 23, 61 So. 377; Justice v. State, 99 Ala. 180, 13 So. 658; Tarver v. State, 137 Ala. 29, 34 So. 627; 30 C. J. 268 (many other citations may be added). An oft-quoted expression from Wigmore on Evidence is to the effect that the circumstances of each case must show whether the requisite consciousness existed, and that it is a poor policy to disturb the ruling of the trial judge upon the meaning of those circumstances. Wigmore on Evidence, p. 1809, § 1442; Evans v. State, 209 Ala. 563, 96 So. 923; Parker v. State, 165 Ala. 1, 51 So. 260; Parker v. State, 10 Ala. App. 53, 65 So. 90; Smith v. State, 16 Ala. App. 47, 75 So. 192.

It will be noted here that the witness stated, "She has got me," and then told the doctor it was unnecessary to take him to the hospital. In a few minutes afterwards he also told the witness Brown, "She finally got me." In the case of Parker v. State, 10 Ala. App. 53, 65 So. 90, supra, the deceased had said that defendant had "killed" him. The Court of Appeals sustained the ruling of the trial court admitting the statement. Such was the substance of the evidence in Adkins v. State, 20 Ala. App. 278, 101 So. 779. In Evans v. State, supra, the statement was, "I think I am going to die." It was held a sufficient predicate. In Parker v. State, 165 Ala. 1, 51 So. 260, supra, the statement was, "The wound in my lung will kill me." Held sufficient. In Gilmer v. State, supra, this court said in substance that it is not necessary that deceased say in so many words that he is conscious of impending death; but it is sufficient if the judicial mind is convinced by legally sufficient evidence that deceased believed death impending, and held no hope of life. 1 Wharton Cr. Ev. (10th Ed.) 535, 555; Lewis v. State, 178 Ala. 26, 59 So. 577; Gurley v. State, 216 Ala. 342, 113 So. 391. Additional authorities could be cited to the same

effect, almóst without limit. The words, "She has got me," in common parlance, may be reasonably interpreted to be the equivalent of the words, "She has killed me." We think a sufficient predicate was shown for admitting the evidence as a dying declaration.

It is also insisted that the statement of the witness Brown as to what deceased said was a statement of an opinion, as deceased could not know that defendant took the pistol from under his pillow and shot him in the back while he was *asleep*. There was only a general objection to this evidence. Such objection does not properly present the question insisted upon. We have, however, carefully considered it, and find that the evidence was not subject to objection for the following reasons:

It is of course well known that a dying declaration is only admissible to the extent that the deceased could have testified had he been alive at the time of trial, and therefore must speak of *facts only* and not mere matters of opinion or surmise. 1 R. C. L. 533; Pilcher v. State, 16 Ala. App. 237, 77 So. 75; Sullivan v. State, 102 Ala. 135, 15 So. 264, 48 Am. St. Rep. 22; Handley v. State, 212 Ala. 347, 102 So. 628; 30 C. J. 251, 278. But this rule does not exclude the statement of a collective fact. Smith v. State, 133 Ala. 73, 31 So. 942; Sullivan v. State, supra.

In cases where a person was shot from the outside of his house, under circumstances which would render it impossible for him to know (or immediately determine) who shot him, he could not state who it was. It would have been only a surmise. Jones v. State, 52 Ark. 345, 12 S. W. 704; People v. Wasson, 65 Cal. 538, 4 P. 555; Berry v. State, 63 Ark. 382, 38 S. W. 1038.

Defendant testified that she and deceased were in the room; no one else. It is not contended that some other person may have shot deceased. It is only a question of whether he shot himself or defendant shot him. He had told the doctor that he was asleep, and, when he heard the report of the gun, he turned over and found himself shot in the back. His entire statement under all the circumstances should be treated as a collection of the facts attending and immediately following the report of the pistol. He knew whether he was asleep, and whether the shot awakened him instantly, and whether he found himself shot in the back, and whether he had done it himself, and whether his wife and no one else was in the room, and what she was then doing, and her appearance. A collection of the facts embraced in his declaration is that based upon what he heard, saw, and knew—his wife shot him in the back as he slept. It was his way of saying that he did not do it himself, and of collecting in one phrase all that he saw immediately following the shooting. One may not see an-

other shoot him in the back, and yet may look so quickly that what he sees justifies him in swearing as a fact that a certain person shot him in the back. This must be carefully distinguished from instances where he could not have known, but only expressed a surmise based upon suspicion. The evidence was admissible, and the jury should weigh its credibility.

On cross-examination of the witness, defendant asked if deceased was an infidel. The court sustained the state's general objection to the question, and defendant excepted.

The dying declaration of a decedent as evidence may be impeached in the same manner and for the causes for which the testimony of a witness given on the stand may be impeached. Carter v. State, 191 Ala. 3, 67 So. 981; Shell v. State, 88 Ala. 14, 7 So. 40; Moore v. State, 12 Ala. 764, 46 Am. Dec. 276; 30 C. J. 278; 1 R. C. L. 84.

The religious unbelief that will exclude the testimony of a living witness will likewise exclude his dying declarations. 1 Wharton Cr. Ev. (10th Ed.) p. 565, § 291; 30 C. J. 278; Donnelly v. State, 26 N. J. Law, 463; Brown v. State, 78 Miss. 639, 29 So. 519, 84 Am. St. Rep. 641; Hartigan v. Washington Territory, 1 Wash. T. 448. Religious unbelief has had much consideration by the courts, as it affects both the admissibility of the testimony and the credibility of the witness.

By the common law no particular form of religious belief was insisted on as the test of competency, other than that there should be a belief in an omniscient Supreme Being as the rewarder of truth and the avenger of falsehood. 5 Jones on Ev. (2d Ed.) §§ 2089–2091. This principle had as its basis a statement by Lord Chief Justice Willes in Omychund v. Barker, 1 Atk. 21, as follows: "Such infidels who believe in God and that He will punish them if they swear falsely, in some cases and under some circumstances, may and ought to be admitted as witnesses in this, though a Christian, country. And, on the other hand, that such infidels who either do not believe in a God, or if they do, do not think that He will either reward or punish them in this world or in the next, cannot be witnesses in any case nor under any circumstances, for this plain reason, because an oath cannot possibly be any tie or obligation upon them." 5 Jones on Ev. (2d Ed.) § 2091.

As pointed out in 40 Cyc. 2203, the following states have abrogated this rule of the common law as controlling the competency of the testimony of a witness by reason of unbelief: California, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Michigan, Missouri, New Jersey, Pennsylvania, Texas, and Virginia. There should also be added West Virginia (State v. Hood, 63 W. Va. 182, 59 S. E. 971, 15 L. R. A. [N. S.] 448, 129 Am. St. Rep. 964);

New York (Brink v. Stratton, 176 N. Y. 150, 68 N. E. 148, 63 L. R. A. 182); Mississippi (Gambrell v. State, 92 Miss. 728, 46 So. 138, 17 L. R. A. [N. S.] 291, 131 Am. St. Rep. 349, 16 Ann. Cas. 147; Code 1906, § 1919).

In Alabama the question seems to have been left unsettled (Beeson v. Moore, 132 Ala. 391, 31 So. 456), though reference was made to it in Blocker v. Burness, 2 Ala. 354; Porter v. Cotney, 3 Ala. 314; B. R. L. & P. Co. v. Jung, 161 Ala. 461(16), 49 So. 434, 18 Ann. Cas. 557. Our Constitution, § 3, does not seem to have been considered in connection with this principle, and we find that the state of the record in this case does not require a decision of its effect on the common-law rule.

As the question we are considering is the admissibility of evidence that a dying declarant is an infidel, the next inquiry we have is the meaning of the term. Webster's New Internat'l Dictionary gives the definition as follows: (1) One who does not believe in the (understood) religion; a disbeliever; (a) a nonChristian or one opposing the truth or authoritativeness of the Christian religion. (2) One who does not believe (in something understood or specified). (3) An unfaithful person. In 2 Bouv. Law Dict. page 1562, the following are the definitions compiled with the authority stated:

"Infidel. One who does not believe in the existence of a God who will reward or punish in this world or that which is to come.—Willes 550. One who professes no religion that can bind his conscience to speak the truth.—1 Greenl. Ev. § 368. One who does not recognize the inspiration or obligation of the Holy Scriptures, or generally recognized features of the Christian religion.—Gibson v. Ins. Co., 37 N. Y. 580.

"This term has been very indefinitely applied. Under the name of infidel, Lord Coke comprises Jews and heathens; Co. 2d Inst. 506; Co. 3d Inst. 165; and Hawkins includes among infidels such as do not believe either in the Old or New Testament; Hawk. Pl. Cr. b. 2, c. 46, s. 148."

In all the following cases and text-books, it was held that, when there is such religious unbelief as, at common law, would disqualify a witness, evidence of such unbelief is admissible to discredit a dying declaration, even where there is a statute or constitutional provision which abrogates the common law in this respect. Gambrell v. State, 92 Miss. 728, 46 So. 138, 17 L. R. A. (N. S.) 291, 131 Am. St. Rep. 349, 16 Ann Cas. 147; State v. Rozell (Mo. Sup.) 225 S. W. 931, 16 A. L. R. 400; 1 Wharton Cr Ev. (10th Ed.) p. 565; Hill v. State, 64 Miss. 431, 1 So. 494; 4 Ency. of Ev. 1014; 1 R. C. L. 549; Goodall v. State, 1 Or. 334, 80 Am. Dec. 396; State v. Ah Lee, 8 Or 214; People v. Chin Mook Sow, 51 Cal. 597; People v. Sanford, 43 Cal. 29; People v. Lim Foon, 29 Cal. App. 270, 155 P. 477; State v. Elliott, 45 Iowa, 486; Nesbit v. State, 43 Ga. 238; Donnelly v. State, 26 N. J. Law, 601, 620; State v. Agnesi, 92 N. J. Law, 54, 104 A. 299; North v. People, 139 Ill. 81, 28 N. E. 966; 56 L. R. A. note, pages 419, 420.

■ Evidence that one, is an infidel, without more, would not be sufficient at common law to disqualify him as a witness, or therefore to discredit his testimony. His belief, to have that effect at common law, must be such as that he does not believe in a Supreme Being rewarding truth and punishing falsehood, here or hereafter.

Assuming, therefore, that the answer to the question under consideration would be in the affirmative, it would not be admissible either to impeach or to discredit the dying declaration according to the common-law rule on the subject. It is not therefore necessary to determine whether there has been a change of such law in Alabama, effected by our Constitution. The court properly sustained the objection to the question.

■ Defendant was required to answer that she had sued deceased twice for a divorce. We think it not improper to prove such facts as tending to show a motive for the offense. Spicer v. State, 188 Ala. 9, 65 So. 972.

■ We cannot review the action of the trial court in refusing to admit the papers and book alleged by defendant as being read by her and her husband shortly before the shooting, for the reason that they are not before us, if for no other reason.

■ The affirmative charge was not due appellant, and the court properly overruled her motion to exclude all the evidence.

■ The refused charges impose an improper burden of proof on the state.

There is no error shown by the record, and the judgment of the trial court is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.