## OLDHAM v. STATE.
### 7 Div. 48.

Court of Appeals of Alabama.
Jan. 22, 1935.

Rehearing Denied Feb. 19, 1935.

Alto V. Lee and McCord & McCord, all of Gadsden, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Ben. F. Ray, Sp. Prosecutor, of Birmingham, for the State.

RICE, Judge.

Appellant was convicted of the offense of murder in the second degree, and his punishment fixed at imprisonment in the penitentiary for the term of ten years.

The deceased, Euclid Sullivan Weaver, known as Mac Weaver, was grievously wounded with a pistol ball, fired from a pistol of what is called a .44 or .45 caliber. The ball "entered in the back about a half or three quarters of an inch from the center of the spine, to the left of the spine, entering the middle portion of the body called the dorsal vertebra or the first lumbra (sic) and penetrated the spine and the liver and made its exit on the chest bone about two inches higher than its entrance on the opposite side of the body, about three quarters of an inch to the middle line."

Deceased was shot at noon, or a little after, on Monday, April 3d. He died at about 4:30 p. m. on April 5th.

Dr. Howell Cross, a witness for the state, testified that he saw deceased about 1:30 p. m. on the same day he was shot; that at that time deceased was "breathing like a man with his breath cut off, about fifty times a minute (eighteen being normal), and was blue, cynotic, and his pulse was hardly countable, extreme shock and he was suffering extremely with his right leg and he had the appearance of fear or fright of death;" that deceased "was in his right mind"; that "I told him he was going to die"; that deceased said he wanted to make a statement; that deceased said that "if he was going to die he would like to make a death statement"; that "we never tell a patient positively that they are going to die. I told him in all probability Mac, you are dying;" that in response to that he said "if I am dying I would like to make a death statement"; that deceased then said *"that while riding a cultivator that a man named Franklin came up with a man named Oldham and that Franklin knocked him from the cultivator to the ground and on arising Oldham shot him from behind";* that that was all deceased said.

Strenuous objection was interposed by appellant to the admission in evidence of the statement of deceased, Weaver, narrated by Dr. Cross, which we have italicized.

As said by our Supreme Court in the opinion in the case of Gilmer v. State, 181 Ala. 23, 61 So. 377, 378: "It is not an indispensable prerequisite to the admission of a dying declaration that the deceased should, in so many words, express a conviction that he is in extremis, that death is impending, and that he has no hope of life; but such a declaration is admissible when, after a careful consideration of all the circumstances, the judicial mind is convinced, by legally sufficient evidence, that, at the time the declaration was made, the deceased was in extremis, that he believed death to be impending, and that he entertained no hope of life."

■ The statement admitted in evidence, which we have identified above, seems to us to fall within the law as we have quoted. It was properly admitted in evidence. Wills v. State, 74 Ala. 21; Marshall v. State, 219 Ala. 83, 121 So. 72, 63 A. L. R. 560.

The fact that the statement was made on the afternoon of April 3d, and that deceased did not die until the afternoon of April 5th, does not militate against this holding. See Moomaw v. State, 24 Ala. App. 459, 137 So. 40.

■■ We have read the evidence in this case, sitting en banc. It appears to us, and we hold, that under the "facts, acts of the parties, and circumstances shown by phases of the testimony," the question of whether or not there was a conspiracy entered into on the morning of April 3d by appellant, J. M. Franklin, and the three parties accompanying them, to go from appellant's home to the home of deceased, and there "post their land line," which they claimed ran through a part of the property then, and for some time theretofore, in possession of deceased, and to commit any act of violence on the person of deceased that might become necessary in carrying out their purpose, was one for the jury, under all the testimony in the case. Jones v. State, 174 Ala. 53, 57 So. 31. Clearly, such a conspiracy, in so far as it contemplated committing violence upon the person of deceased, was unlawful; and, once it was formed, "each conspirator is [was] bound by the acts and declarations of his coconspirators done and said in furtherance of the common purpose." Lancaster v. State, 21 Ala. App. 140, 106 So. 609, 612.

■ We think the testimony of the witness Mrs. Toney as to the conduct of Mrs. Oldham, the wife of appellant, at the very time of the fatal rencounter—in sight of same—may fairly be said to come within the purview of the principle (italicized) of law embodied in the quotation from our opinion in the case of Bozeman v. State, 25 Ala. App. 281, 145 So. 165, 166, to wit: "It is impossible 'to lay down a general rule as to the acts or declarations which will be received as forming part of the res gestæ. Each case is dependent in a great degree on its peculiar facts and circumstances. *Such acts or declarations as are thus received must have been done or made at the time of the occurrence of the main fact, must have a tendency to elucidate it, and must so harmonize with it as obviously to constitute one transaction.'"*

In the case of the testimony referred to above, it is plain that it is of acts or declarations "made at the time * * * of the main fact"; and it either tends to "elucidate it," and * * * so harmonize with it as obviously to constitute one transaction," or it does not. If it does, it is competent; if it does not, it is irrelevant and immaterial; in which event we are unable to see that its admission in any way harmed appellant. So, in no event, would we order a reversal of the judgment of conviction on account of the admission of this testimony.

548

Both counsel for appellant and for the state have filed voluminous briefs here. But the real questions in the case seem to us very few. It would be a matter of physical impracticability, if not impossibility, to have our opinion discuss even the greater part of the well-nigh multitudinous "points" debated by counsel in their briefs. But as best we could we have sought to locate, in the maze of "argument" submitted here, the few questions which, as we view the proceedings, our duty under Code 1923, § 3258, requires us to decide.

█ It would seem that we should only say, further, that the letter written by J. M. Franklin, one of those the jury was authorized to find to be a coconspirator with appellant on the day of the fatal rencounter, was properly allowed in evidence on the cross-examination of said Franklin. It had a legitimate tendency to refute the testimony of the said Franklin as to what occurred upon the occasion of the shooting of the deceased.

We observe no prejudicial error in the refusal of any written charge appearing in the record and so indorsed. If not defective in some way, in each instance we find the substance of said charge to have been otherwise given to the jury.

It appears to us that appellant had a fair and impartial trial, aided by excellent counsel. His every right was, as plainly appears, zealously protected. The jury's verdict was amply supported by the testimony.

There is nowhere, that we can find, evidence of a ruling or action that was infected with error of a nature prejudicial to him. The judgment of conviction is affirmed.

Affirmed.