9 So.2d 150

**THOMAS v. STATE.**

6 Div. 935.

Court of Appeals of Alabama. .
June 30, 1942.

Thos. S. Lawson, Atty. Gen., and Jas. F. Matthews, Asst. Atty. Gen., for the State.

T. K. Selman and R. L. Newton, both of Jasper, for appellant.

RICE, Judge.

Appellant, a twenty-two year old girl, cut Oliver Brannon, a young man thirty-three years of age, with a knife, on the third day of August, 1941. On the 15th day of August, 1941, Oliver Brannon died, admittedly as a result of the knife wound inflicted by appellant.

The evidence without dispute tended to show that on Sunday afternoon shortly after four o'clock, on August 3rd 1941, appellant and deceased, together with appellant's younger sister, aged seventeen, and another man named Vertis Black, were together at or near a bridge on a country road in Walker County, and that they had driven there together from Cordova in deceased's car, having provided themselves with whiskey and material for making sandwiches on the way to the bridge. And that they were all drinking.

Shortly before reaching the bridge appellant and her sister engaged in a quarrel, and, when the car stopped, appellant, being somewhat angry and excited, refused to

get out when the other members of the party left the car and went to the bridge to make sandwiches.

Thereafter, appellant became impatient and began to blow the motor car horn, whereupon deceased returned to the car and engaged in conversation with her.

The evidence as to what took place after deceased returned to the car is in such a state of conflict and confusion as to make it a question for the jury as to what did actually happen.

No attempt will be here made to state its varying tendencies except to say that appellant herself testified that deceased made improper proposals to her, and slapped her, immediately before she cut him in the neck with her pocket knife; whereas, according to the dying declarations of deceased, related by several witnesses for the State, nothing of the sort happened, and appellant did the cutting while deceased's head was turned, and without any provocation on his part.

Appellant was indicted for the offense of murder in the second degree; convicted of the offense of manslaughter in the first degree, and her punishment fixed at imprisonment in the penitentiary for the term of ten years.

■ Obviously, from what we have written hereinabove, the appellant's written request that the jury be charged to acquit her was properly refused. Ballentine v. State, 28 Ala.App. 450, 186 So. 783; Hannah v. State, 23 Ala.App. 487, 2nd headnote, 127 So. 795.

The principal contention for error urged by counsel here representing appellant is that the trial court improperly admitted into the evidence testimony by the witness Powell Hamner, the Sheriff of the County, as to dying declarations made to him by Oliver Brannon, the deceased.

■ It is of course the law that for testimony as to a statement to be admissible as of a dying declaration it must first be shown that the declarant, at the time of making the statement, "should have been in actual danger of death; that he should then have had a full apprehension of his danger; and that death has ensued." Pulliam v. State, 88 Ala. 1, 6 So. 839, 840.

■ "It is the exclusive province of the court to determine the admissibility of dying declarations, and it is the province of the jury to pass upon their credibility and sufficiency." Moomaw v. State, 24 Ala. App. 459, 137 So. 40, 41; and see Marshall v. State, 219 Ala. 83, 121 So. 72, 63 A.L.R. 560.

Here, the deceased was wounded by the stab of a penknife in his neck—from the circumstances we assume in his jugular vein. He was placed in the hospital on Sunday afternoon.

Chester Black visited him on this same Sunday afternoon, at which time he told Chester Black "he was going to get well."

But the witness Chester Black went back to see deceased another time—the witness said on the following *Tuesday*—at which time deceased said to Black "that he believed he was going to die—that he couldn't get well." He said (according to Black) "she cut me," and said "she got me." And, Black further testified, "he wanted me to go get the Sheriff and wanted to make a statement 'before it is too late.'"

Then, Black testified: "I came and got the Sheriff, Powell Hamner, and went back over there the same day. I came right on over to the Sheriff's office and went right back. I would say about twenty minutes passed, in my judgment, from the time I left the hospital to get the Sheriff until I got back over there."

True, the Sheriff testified that this occurred on *Monday*, whereas Black testified it was on *Tuesday*. But Black testified that the *only* time he was present and heard statements by Oliver Brannon, the deceased, (other than on Sunday afternoon) was when he went for the Sheriff—and the Sheriff was present.

■ So, it was open to the learned trial court to find, as he did, that either the Sheriff or Black was mistaken as to the *day;* but that each of them was testifying to the same *occasion.*

■ So finding, it is plain that the Sheriff's testimony was amply admissible (though he said deceased did not say anything to him, or in his presence, about expecting to die), because of the testimony of Black. We think the following statement is the law of our State, viz: "a dying declaration is not inadmissible in evidence because the decedent did not impart, to the one to whom it is made, belief in his impending death, if the existence of that fact, before the declaration was made, is established by other evidence." 26 Am. Jur. 446.

According to the dying declaration of Oliver Brannon, as related by the Sheriff—and, for that matter, other witnesses—appellant struck Oliver Brannon in the neck (jugular vein—though this, we are persuaded, was inadvertent) for no cause at all. And he died as a result thereof.

There are many circumstances disclosed by the evidence which would seem to lead the unbiased mind to the conclusion that this poor misguided girl had no thought whatever of taking Oliver Brannon's life when she angrily—petulantly seems a more descriptive word—struck him in the face (neck) with the little penknife.

But the law is written. "An actual intent to take life is not an essential element of manslaughter in the first degree. The voluntary setting in motion or application of unlawful force, whereby death ensues, suffices to supply the legal element of evil intent, *however free the action may be from actual purpose to kill.*" (Italics supplied by us.) Smith v. State of Alabama (Ex parte State of Alabama ex rel. Attorney General), 243 Ala. 254, 11 So. 2d 471, 472.

As the learned Justice writing the opinion in the case just next above cited, which was a petition for certiorari to this court, went on to say for the Supreme Court: "It has long been the settled law of the state that where the evidence shows that the blow which produced death was with a deadly weapon [and a penknife *is* a deadly weapon—when used as here shown] intentionally aimed at the person slain, the homicide, if not excusable on the ground of self-defense, is either murder or manslaughter in the first degree. The law in respect to manslaughter in the second degree is not applicable in such case."

Perhaps the three last next preceding paragraphs have no proper place in our opinion. But imprisonment for ten years in the penitentiary seems such a frightful penalty for what appears clearly to have been a trick of fate enlarging what would have been but an angry spat, fired by whiskey furnished by the deceased, into a charge of unlawful homicide committed by appellant, that we felt impelled to let the observations go of record for use in another forum.

Appellant's counsel devote much space in their brief filed here to a discussion of a matter raised by their motion filed below on behalf of appellant to set aside the verdict of the jury and grant her a new trial, viz: That whereas, in striking the jury to try the case, they struck off the name of one Brooks D. Boykin and left on the list to serve as a juror one George W. Davis, the Clerk of the court erroneously struck the name of George W. Davis and left to serve on the jury Brooks D. Boykin. And that Brooks D. Boykin did actually serve on the jury—while George W. Davis did not.

But there are two answers to all that they have to say in this regard.

In the first place, it plainly appears that they were well aware of the mistake before the jury brought in its verdict. And that, instead of taking action to remedy it, they deliberately speculated—by waiting to see whether or not the jury's verdict would be favorable to the defendant (appellant). And this forecloses the appellant, here. Hanye v. State, 211 Ala. 555, 101 So. 108.

And in the second place, and regardless of the above, it is definitely the law that for the action of the trial court in denying (or granting) a motion for a new trial to be reviewable here the *bill of exceptions must* "contain a sufficient recital to show the making of such motion, the *ruling thereon, and an exception thereto.*" Ex parte Grace (Grace v. Old Dominion Garment Co.), 213 Ala. 550, 105 So. 707, 708.

The bill of exceptions here does not contain the above prerequisite recitals. Hence we cannot review the action of the lower court in overruling the motion for a new trial. Ex parte Grace, supra.

Other exceptions apparent are to rulings either patently correct or innocuous.

We have diligently searched the record (including the bill of exceptions) for error, but can find none. Hence the judgment must be affirmed.

It is so ordered.

Affirmed.