[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 143 
A jury found appellant-defendant guilty of robbery and fixed his punishment at imprisonment in the penitentiary for twenty-six years. He was duly sentenced accordingly.
There is no disagreement on appeal as to the facts, which are summarized in appellant's brief.
Beulah Boggus, the victim of the alleged robbery, testified that on April 2, 1974, about 3:00 P.M. three white men came to her store in the Red Bank community of rural Lawrence County, left for a while and returned about 5:00 P.M., when they displayed pistols and proceeded to rob her of her money, rings and pistols. She identified the three as the defendant John Henry Wade, his son Johnny Wayne Wade, and one Allen Moye. She was living at the time with her adopted daughter in a dwelling contiguous to the store. She said the younger Wade told her: "We are robbers. We came after your diamonds and money, and you have plenty of it." According to Mrs. Boggus, when she refused to cooperate with the robbers in revealing the whereabouts of her money, she was hit in the head with a pistol, tied, gagged, choked and tortured with a hot smoothing iron. *Page 144 
Wanda Boggus, the adopted daughter of Mrs. Boggus, corroborated her mother's testimony relative to the facts of the robbery other than in two respects. She could not identify defendant John Henry Wade as being one of the three robbers and she saw only one pistol.
Allen Moye testified for the State and admitted his active participation in the robbery. However, he said that defendant did not enter the victim's house during the robbery; that defendant dropped Johnny Wayne Wade, Moye and one Thomas O'Such off at the victim's house and that the trio proceeded to rob Mrs. Boggus substantially in the manner testified to by her and her daughter. His testimony contained repeated statements to the effect that defendant was the "pick-up-man."
Defendant did not testify, but two witnesses testified in his behalf to the effect that they were employed by defendant at his service station in Oakman; that defendant worked regularly at the station from about 7:30 A.M. to 6:30 P.M. each day and that he did not take off from his work at the service station during the month of April 1974. Two deputy sheriffs of Walker also testified on call of the defendant that they were acquainted with defendant during and before April 1974 and that they regularly saw him working at the service station. No contention to the contrary is made on appeal.
The jailor and radio dispatcher for the Lawrence County Sheriff's Department testified as a witness for the State that he was present during the preliminary trial of defendant; that he listened to the testimony of Mrs. Boggus on the preliminary trial; that defendant was present during the preliminary trial. He said that he escorted defendant from the courtroom to the county jail and while doing so, without being questioned by anyone, defendant said, "Everything the lady said over there was true except one thing.," that defendant then said, "I was not in the house." Appellant now urges that such testimony was inadmissible, that it is "hearsay in default of any applicable exception thereto." Appellant also argues that by calling for such testimony, the State was endeavoring to bolster the testimony of Mrs. Boggus. Defendant did object to questions calling for the testimony, but the grounds thereof on the trial did not include any of the grounds asserted on appeal. The grounds asserted on the trial were that the statement was "not voluntary, and that he was coerced and it violated the Constitution of Alabama and the Constitution of the United States." and that "No warnings were given and no attempts were made by this Officer to advise this man of his rights, and they were not voluntarily made." After a requested cross-examination of the witness out of the presence of the jury by defendant's counsel, the court ruled:
 "All right. The Court rules that this was a volunteered statement, or a spontaneous utterance and, therefore, I am going to let the State offer it into evidence."
We find no error in the court's action in the respect noted. Upon being asked on voir dire on cross-examination whether defendant was advised of his rights, the witness said that he didn't have time. He further said defendant was not upset at the time. Upon being asked whether he stopped defendant before he completed his statement, he again said he didn't have time. The record convinces us that the statement of defendant is to be classed as a volunteered statement, in no way influenced by the witness or anyone else. Miranda holds:
 "In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to *Page 145 
confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726.
The grounds of objection now made to the questions calling for the particular evidence under consideration are at variance with the objections made on the trial of the case. Such grounds of objection are not available on appeal. Fuller v. State, Ala.Cr.App., 338 So.2d 492 (1976); Crowe v. State, Ala.Cr.App.,333 So.2d 902, cert. denied, 333 So.2d 906; Burrow v. State,55 Ala. App. 24, 312 So.2d 596; Reese v. State, 49 Ala. App. 167,269 So.2d 622, cert. denied, 289 Ala. 750, 269 So.2d 625.
Counsel for defendant was allowed to ask State's witness Sergeant Robert E. Hancock as to what Beulah Boggus, the alleged victim of the robbery, told him relative to the robbery, particularly defendant's connection therewith. Counsel was also allowed to ask him as to Mrs. Boggus' testimony on the trial. The following occurred:
 "And there is a conflict there as to what she told you then and what she told the jury, is there not?
"MR. PETTUS: We object to that.
"THE COURT: Well, sustained."
Both before and after, the witness made it clear that Mrs. Boggus had told Sergeant Hancock that defendant came in the house on the first trip to the store that afternoon, but that he did not enter the house at the time the robbery was committed, on the second trip. Unquestionably, the conflict between what the witness told Sergeant Hancock and what she testified on the trial is important, and certainly tends to some extent to weaken her testimony, but defendant had the full benefit thereof, by the clear and definite testimony of the witness which factually showed the conflict. No harm was caused defendant by the ruling.
During redirect examination of Allen Moye, after he had been intensively interrogated and cross-examined as to the arrangement or agreement that was made among the conspirators themselves, Johnny Wayne Wade, John Henry Wade, a person by the name of Neil Nicholson, and Tom O'Such, as to how the robbery of Mrs. Boggus was to be consummated, including the arrangement they had among themselves that defendant would drive his car, the following occurred:
 "Q Is there any particular significance to the fact that Mr. Wade drove his car down to Beulah Boggus' house the night that she was robbed?
"A Did he drive his car?
"Q Is there any particular significance to that?
 "MR. POWELL, Well, we object to that. I don't know what he's asking him. I don't understand that question myself.
"A Why?
"Q Why did he drive his car?
 "MR. POWELL: Now, we object to any why, because it's a mental operation.
"THE COURT: Overruled.
"Q Why did he drive his car?
 "A Mr. Wade drove his car because he was going to be the pick-up-man. Therefore, that is the reason he drove his car, because if he was to get stopped running up and down the road waiting to pick us up, he would be in his car."
If, as contended by appellant, the question objected to calls for the intent, motive or other uncommunicated mental operation of one other than the witness and if the objection had been based on that ground, we would agree with appellant that defendant's objection to the question should have been sustained. To hold otherwise would not be within the logic or the beneficence of Starr v. Starr, 293 Ala. 204, 301 So.2d 78
(1974), wherein the Supreme Court wisely opened the door to testimony of a witness as to his own uncommunicated intent or the like.
It is to be noted that in defendant's objection to the question he grounded it on the assertion that "It's a mental operation." *Page 146 
He did not say whose mental operation it was. According toStarr, if it was that of the witness, the objection was not well taken. If it was that of defendant, and the ground had been so stated, it would have been a valid objection. It is clear that appellant takes that position now, but it is far from clear that he took that position on the trial. He did not so state, although such may have been his intention. We have to admit that we are at a loss to determine what counsel for defendant intended by the objection and what counsel for the State intended by the question. We are unable to reverse the trial judge for any failure to correctly assay the "uncommunicated intention" of either counsel.
We further state that in the light of the context of the question, particularly the preceding part, when considered with the answer to the question, the question called for neither the intention of the witness nor the intention of defendant, and the only appropriate objection, if any, should have been on the ground that it called for an opinion or unauthorized conclusion of the witness, as distinguished from testimony as to a fact. Even so, we are convinced that the question, when considered in the light of the context and the answer thereto, called for a "collective fact" or a "shorthand rendition of fact," to which a witness may testify. South and North Ala. Railroad Co. v.McLendon, 63 Ala. 266; Marshall v. State, 219 Ala. 83,121 So. 72; Mobile J. K.C.R. Co. v. Hawkins, 163 Ala. 565, 585,51 So. 37; Johnson v. State, 15 Ala. App. 194, 72 So. 766. See also Gamble, McElroy's Alabama Evidence, § 127.01 (3), particularlyVariety No. 7.
The witness Allen Gerald Moye, according to his own admissions, had been convicted of six felonies. He was at the time of the trial of this case under a thirty-year sentence for robbery in Cullman County, Alabama; he had received two thirty-year sentences for robberies in Dallas County, Alabama. He had not been indicted for the robbery of Mrs. Boggus. He denied any "deals" with the State in exchange for his testimony against defendant, but he freely acknowledged, on cross-examination, that he expected some leniency by reason of his testimony. He said that in February 1974, he and defendant, accompanied by Wayne Wade, went to Town Creek[1] and discussed the planned robbery with Neil Nicholson. The defendant drove the automobile; he had called Moye to go with him and his son to discuss the matter with Nicholson, who "was setting this robbery up of this lady's house." They understood she may have had approximately $100,000, and they planned to rob on a percentage basis. Neil wanted defendant, Moye, and Johnny Wayne Wade to rob her. Defendant asked him to show them where she lived, and they drove over to Mrs. Boggus' house. He said defendant went to the door and knocked, as Mr. Nicholson "had already explained to us that she didn't know you real well that she wouldn't come to the door or let you in her little store after dark." Defendant knocked at the door and returned to the automobile, and they returned to Nicholson's house. Another visit was made thereafter, in an automobile driven by defendant, and defendant and Moye went to Mrs. Boggus' house again; defendant inquired of Mrs. Boggus as to the whereabouts of Mr. Nicholson. Thereafter, Moye and defendant went to the Nicholsons' house, at which time defendant and Moye discussed with Nicholson their plan for the robbery. Moye and defendant returned to defendant's house in Walker County, and then Moye returned to his then home in Jefferson County. They continued meeting and laying their plans; defendant and Moye went again to Mrs. Boggus' house, at which time they purchased some beer, some pickled eggs and pickled pig feet, for which defendant paid, and they then left and returned to defendant's home; they repeated this "routine" about two weeks later; they told Mrs. Boggus they were construction workers. They continued to discuss the plans and brought "Tom," otherwise identified as Thomas O'Such, in on the plans for the robbery. The witness first met "Tom" at *Page 147 
the home of defendant. In about two or three weeks another trip was made by defendant and Moye to the store, at which time defendant and Moye went in the store and went through the same "routine," and then returned to defendant's home. At a subsequent time, defendant, Moye, "this fellow, Tom," and John Henry Wade made the trip in the witness' car "just to get more acquainted with Mrs. Beulah." At that time Mrs. Boggus was having some plumbing trouble, about which Moye talked with her and told her he thought he could bring someone that could fix it. He then returned to defendant's home and told defendant that he thought "the time was right," with which defendant agreed, but said that he couldn't leave his station the next day. However, Moye and Larry Wade went to Mrs. Boggus' the next day and were informed by Mrs. Boggus that a plumber had come and fixed the plumbing.
On the day of the robbery, according to Moye, he met with defendant, "Tom," and Johnny Wayne Wade, and went in defendant's car, with defendant driving, and "headed out to Mrs. Beulah's home to rob her." On their first trip to the store that day, defendant, Moye and Wayne Wade entered the store, bought some beer and said they wanted to come back later and pick up a large amount of beer for a party. They were "more or less laying down our reason for coming back after dark." Thereafter, the four rode around "killing time."
Whether a specific statement of a witness is inadmissible, over an appropriate objection, as constituting an unauthorized conclusion or opinion as distinguished from an admissible shorthand rendition of fact is not necessarily determinable by the content of the statement alone. Often, the surrounding circumstances as shown by the evidence dictate a determination different from what it would be under different circumstances. Even if the objection to questions eliciting the evidence under consideration had been based on an objection that it called for an unauthorized conclusion or opinion of the witness, the matter would have been resolvable by a determination whether the witness was basing his answer on his own opinion, or, on the other hand, was stating as a collective fact a particular feature of the express plans of the conspirators. We are firm to the conclusion that, in the light of the witness' lengthy testimony as to plans of all or some of the conspirators, including appellant, made among them on several different occasions over a period of several months, as to which the witness was intensively and extensively cross-examined, he was testifying as to a collective fact when he explained why defendant was driving his automobile. His answer constituted a shorthand rendition of one of the agreed upon plans of the parties as they meticulously wove their evil webb.
In addition, we note some testimony of the same witness, given on direct examination, to which no objection was made:
"Q Had that been prearranged among youselves?
"A Yes, sir.
 "Q And then after you all got in that the defendant was to leave?
 "A That was — we reached that decision on the way down there that afternoon, because we were in Mr. John Henry Wade's car, and we decided that he would drive, since it was his car. He was going to be a pick-up-man.
"Q So you got in the house and he drove off?
"A Yes, sir." (Emphasis supplied)
We also conclude that the particular evidence called for by, and given in answer to, the question to which the objection was made as to why defendant was driving his automobile, was not prejudicial to defendant, as substantially the same testimony had been admitted in evidence without objection. Even the erroneous admission in evidence of a conclusion of a witness is not prejudical where the witness had already given substantially the same testimony without objection.Higginbotham v. State, 24 Ala. App. 40, 129 So. 713; Guff v.State, 24 Ala. App. 41, 129 So. 714. Admission of testimony, if error, is harmless where the same witness has previously testified to the *Page 148 
same facts without objection. Espey v. State, 270 Ala. 669,120 So.2d 904; Whitehead v. State, 41 Ala. App. 387, 133 So.2d 513;Evans v. State, 40 Ala. App. 282, 112 So.2d 355.
Appellant relies upon three separate and unrelated statements made by prosecution counsel during the trial as a basis for an argument that conduct of such counsel "had the accumulative effect of depriving him of Due Process of Law." To two of them no objection was made by defendant. The third occurred during cross-examination of a witness for defendant who had testified that he had worked for defendant during the period of time that evidence for the prosecution had shown that defendant and others had been traveling to the store of Mrs. Boggus and plotting the robbery. The conduct alleged to have been improper, the objection of defendant's counsel and the action of the court were as follows:
 "Q Did you know of his being accused of being in Cullman, Alabama, during that time?
 "MR. POWELL: Now, we object to that, Your Honor. That is not an issue here.
"THE COURT: Sustained."
We do not question the correctness of the trial court's ruling, but the question was not so highly improper as to justify appellant's denunciation of it. The witness was stating in effect that during all of the time involved defendant had never left his place of business at Oakman, and prosecution counsel is not to be condemned for testing the witness' credibility as to that point. As pointed out by appellant and as referred to hereinbefore, there was some testimony by Moye that he had been convicted of a robbery in Cullman County. Furthermore, there was testimony by Moye that defendant had been looked upon as "boss or leader of your association" in connection with other planned robberies. Although the trial court probably acted wisely in closing the door to the possibility of prejudice to defendant by questions as to any robbery other than in the case being tried, we cannot say that the question was not asked in good faith. Certainly, it did not measure up to conduct that justifies a reversal of the judgment. The other two incidents involved no prejudice to defendant, and, as is indicated by the silence of defendant's counsel at the time, were not worthy of any remonstrance or objection by him.
Appellant finally urges that there is reversible error in the action of the trial court in denying defendant's motion or request that he be present at the hearing of the motion for a new trial. It seems that at the time of such hearing, the federal authorities had taken charge of defendant, that he was then being held in jail in Birmingham, Alabama, to be arraigned in the United States District Court. It also appears that no effort had been made through the federal authorities, under whose control defendant was at the time, to have defendant at the hearing. The court stated:
 ". . . Well, after consideration of the motion for new trial on the grounds raised, the court rules that there is no question of evidentiary facts that need to be raised, that all of the questions are questions of law, and that the Court can make an intelligent ruling on that motion for a new trial without having the defendant present, and that he will in no way be jeopardized in his right to a new trial on any appeal that might follow that."
The court then announced that the motion for a new trial was overruled. Defendant's counsel gave oral notice of appeal. The next day the written order of the court overruling the motion for new trial was entered. Appellant contends that he had a right to be present at the hearing on the motion for a new trial and that the denial thereof was in violation of his Constitutional right to due process of law. No authority has been cited to that effect, and we find none, although the right of a defendant to be present throughout the trial of a case in which his life or liberty is at stake is now beyond question.
In United States v. Lynch, 132 F.2d 111, 113 (3d Cir. 1942), cert. denied, 318 U.S. 777, 63 S.Ct. 831, 87 L.Ed. 1146, it was held that *Page 149 
the defendant's right to be present at his trial did not "embrace a right to be present also at the argument of motions prior to trial or subsequent to verdict." Accord, Cuckovich v.United States, 170 F.2d 89 (6th Cir. 1948); United States v.Makris, 398 F. Supp. 507 (S.D.Tex. 1975).
Rule 43 (a) of the Federal Rules of Criminal Procedure provides:
 "A defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the empaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule."
This is in harmony with principles that have prevailed in Alabama for many years. Rule 43 (c) provides that "A defendant need not be present in the following situations: . . (3) at a conference or argument upon a question of law. . . ."
Defendant based his motion for a new trial on nineteen separate grounds. All of them related exclusively to what had previously transpired in the case, and there was no indication in any of them that there would be any occasion for presentation of any evidence on the hearing or that any factual issue would be involved.
We do not hold for naught any contention that there could not conceivably be situations arising in which a defendant would be entitled to be present at a hearing on a motion for a new trial, but no such situation is presented in this case. Our attention is not called to, and we cannot find, any possibility of injury to the defendant by his absence from the hearing on the motion for a new trial. The trial court correctly responded to defendant's request or motion that arrangements be made for his attendance at the hearing.
We can find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge Leigh M. Clark, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment is hereby
AFFIRMED.
All the Judges concur.
[1] In north Lawrence County and about ten miles from Red Bank. *Page 560